Argued and submitted September 30, 2011, affirmed April 25, petition for review denied October 4, 2012 (352 Or 564)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BYRON RENEE LEWIS,
aka Rhino, aka Bryon R. Lewis,
*Defendant-Appellant.*

Multnomah County Circuit Court
880735176; A141202

278 P3d 51

Susan F. Drake, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Byron Renee Lewis filed the supplemental brief *pro se*.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals his conviction and sentence for attempted assault in the first-degree with a firearm, ORS 163.185. In 1989, shortly after the jury's verdict, but before sentencing, the state sent defendant to Washington for sentencing for separate crimes he had committed. Washington sentenced defendant and did not return him to Oregon until he had completed serving that sentence in 2008. Thus, almost two decades after his attempted assault conviction, defendant was sentenced in Oregon on December 1, 2008. By that time, the transcript of defendant's trial had been destroyed or lost. On appeal, defendant assigns as error the trial court's denial of his motions for reversal of his conviction and dismissal of charges against him with prejudice based on the state's violation of the Interstate Agreement on Detainers (IAD), ORS 135.775, and his constitutional speedy trial and due process rights, as well as the trial court's loss or destruction of defendant's trial record. Defendant also makes several *pro se* arguments. For the reasons that follow, we affirm.

## I.   FACTS AND PROCEDURAL HISTORY

In a case like this one, where the trial court did not make factual findings, we recount the undisputed facts and resolve factual disputes in a manner favorable to the trial court's legal conclusion. *See State v. Johnson*, 342 Or 596, 608, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008) (in a case involving a question of law—defendant's constitutional right to a speedy trial—the court stated that it is "bound by a trial court's findings of historical fact if there is evidence in the record to support them"); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (if there is evidence from which facts could be decided more than one way, appellate court "will presume that the facts were decided in a manner consistent with the ultimate conclusion" when trial court has not made findings). We begin with the procedural history surrounding defendant's convictions for the felonies he committed in Washington and in Oregon.

On December 10, 1988, defendant was convicted of first-degree burglary, assault, and rape in Clark County, Washington. After that conviction, he waived extradition to

Oregon to stand trial on charges of attempted murder and attempted assault. Washington issued a release order sending defendant to Oregon to stand trial and specifically provided that

"[t]his release is only for the purpose of being present at your trial in Multnomah County. Upon completion of the trial, you shall immediately be returned to custody of the Clark County Sheriff's Office."

On January 27, 1989, an Oregon jury acquitted defendant of attempted murder but found him guilty of attempted first-degree assault for shooting at the Washington victims as they were traveling in their car in Portland. Ultimately, the court scheduled defendant's sentencing for April 10, 1989, to allow time for a presentence investigation report and a dangerous offender assessment. The court also intended the schedule to allow time for Washington to sentence defendant before returning him for sentencing in Oregon, because shortly after the guilty verdict, defendant had been transported back to Washington for sentencing for his Washington crimes.

Defendant was sentenced in Washington on March 30, 1989.[1] At the Washington sentencing hearing, the prosecutor informed the trial court that defendant was "willing to waive whatever extradition rights he ha[d]," and that "he ha[d] to go to Oregon to get sentenced over there but their sentencing isn't for a week or two so his request is to remain here." The prosecutor suggested that the matter be set over to April 5, 1989, "for entry of a waiver if [defendant's] willing to waive going to Oregon for sentencing, and if not to the Department of Corrections." The court responded that it had no objection to that process "if the proper waiver is executed."

The Washington court cancelled the April 5, 1989, hearing concerning defendant's transfer to Oregon, and defendant was not sent to Oregon for his scheduled sentencing on April 10, 1989. There is no evidence in the record that defendant's counsel protested the cancellation of the hearing in Washington or attempted to reschedule it. The record also

---

[1] Defendant unsuccessfully appealed his Washington convictions. *State v. Lewis*, 59 Wash App 1032 (1990), *rev den*, 116 Wash 2d 1008 (1991).

fails to reflect that either defendant or the Washington prosecutor filed a waiver of defendant's extradition rights with the Washington court before or after the transfer hearing scheduled for April 5.

Rather, on April 5, 1989, the probation department in Oregon reported to the Oregon trial court that, according to the prosecutor, defendant had refused transport. On April 11, 1989, the Oregon court entered an order issuing a bench warrant, which similarly noted that defendant was in custody in Clark County, Washington and "refused to be transported to Multnomah County, Oregon."

Defendant contends that the April 1989 finding as to his refusal to be transported is unsupported by the record and that he in fact did not refuse to return to Oregon for sentencing. He relies on a photocopy of a note he submitted with a motion filed in the Oregon trial court in 2005. That note appears to be from the records of the Multnomah County District Attorney's Office and is dated April 7, 1989. The note states that someone from that office called the Clark County Jail and was told that defendant had been transferred to a Washington prison to begin serving his sentence. The note also references another call, to the Washington prosecuting attorney, who explained that the chief criminal prosecuting attorney had decided not to return defendant to Oregon because he feared that he would not be returned to serve his Washington sentence. The record does not reflect that the note was before the Oregon court in 1989 when it issued the bench warrant.

Although those portions of the record permit several inferences, in accordance with our standard of review, the record supports an implicit finding by the sentencing court in this case that in 1989, as reported to the Oregon trial court, defendant had refused transfer to Oregon. Defendant's actions after he began serving his prison term in Washington, when Oregon promptly attempted to have defendant returned to the state for sentencing, further support the implicit finding that defendant both initially and then repeatedly thereafter resisted transfer to Oregon for sentencing for strategic reasons.

In May 1989, the Multnomah County District Attorney's office requested approval from Oregon's governor

to take temporary custody of defendant under the IAD, which was granted on May 24, 1989. Oregon, through the district attorney, then invoked Article IV(a) of the IAD by sending a formal written request to the superintendent of the Washington State Prison where defendant was an inmate.[2] The Washington Department of Corrections forwarded the detainer, a "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," a "Request for Temporary Custody," and an "Explanation of Inmate's Rights under Article IV of the Agreement on Detainers" to defendant, along with copies of the indictment, warrant, and fingerprint card. The notice documents informed defendant that he had an untried indictment in Oregon and that he had the right under the IAD to request final disposition of those charges by contacting prison officials.

On June 12, 1989, the Washington Department of Corrections informed the district attorney that defendant had received the state's detainer and request for custody and a notice of rights, and that defendant "has elected to do nothing in regards to the detainer." The prison superintendent recommended to the Washington governor that defendant be temporarily moved to Oregon and that the Washington Department of Corrections schedule a pretransfer hearing as soon as possible, following procedures outlined in the IAD.

Defendant then elected to oppose his return to Oregon in subsequent proceedings in Washington. On September 27, 1989, a pretransfer hearing was held before a Washington trial court. The record is silent as to whether defendant opposed his return to Oregon during the hearing, but defendant's opposition is apparent thereafter.

---

[2] Article IV(a), as codified in ORS 135.775, provides:

"The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with paragraph (a) of Article V of this agreement upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request; And provided further, that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon the own motion of the governor or upon motion of the prisoner."

The Washington court rejected Oregon's request for defendant's return under the IAD, ruling that, based on *State v. Barefield*, 110 Wash 2d 728, 756 P2d 731 (1988), the IAD did not apply to sentencing proceedings. The State of Washington appealed, contending that *Barefield* did not apply and that it was required to transfer defendant to Oregon's custody for sentencing. Defendant cross-appealed, arguing that the pretransfer court should have "dismiss[ed] with prejudice the Oregon detainer" because "he validly invoked the provisions of the IAD and the State of Oregon exceeded the IAD's 180-day time limit in bringing him to his sentencing hearing." In an unpublished opinion, the Washington Court of Appeals affirmed and rejected defendant's cross-appeal based on the inapplicability of the IAD. *State v. Lewis*, No 10587-3-III (Wash App Div 3, Feb 14, 1991). Defendant's petition to the Washington Supreme Court was denied. *State v. Lewis*, 117 Wash 2d 1007, 815 P2d 265 (1991).

Meanwhile, back in Oregon, defendant, representing himself, filed numerous motions to dismiss his conviction beginning in 1990, again arguing that the state had failed to sentence him within 180 days as required by the IAD. In 1992, the Multnomah County Circuit Court issued an order denying defendant's *pro se* motions to dismiss. In that order, the court determined that "defendant has fought return to Oregon under the Interstate Act on Detainers for sentencing[.]" Defendant appealed the court's order, and, in 1993, we dismissed the appeal because the order was not appealable under ORS 138.040 and ORS 138.053.[3] Defendant also filed a

---

[3] ORS 138.040 provides that "the defendant may appeal to the Court of Appeals from a judgment or order described under ORS 138.053 in a circuit court[.]" In turn, ORS 138.053 provides, in part:

"(1) A judgment, or order of a court, if the order is imposed after judgment, is subject to the appeal provisions and limitations on review under ORS 138.040 and 138.050 if the disposition includes any of the following:

"(a) Imposition of a sentence on conviction.

"(b) Suspension of imposition or execution of any part of a sentence.

"(c) Extension of a period of probation.

"(d) Imposition or modification of a condition of probation or of sentence suspension.

"(e) Imposition or execution of a sentence upon revocation of probation or sentence suspension."

petition for a writ of mandamus, which the Oregon Supreme Court rejected in 1994.

In 1997, defendant also filed a habeas corpus petition with the United States District Court for the District of Oregon, contending that the state had violated his Sixth Amendment speedy trial rights and due process rights by "negligently fail[ing] to either sentence him before returning him to Washington or to re-obtain him for sentencing following his return to that state." The district court denied habeas corpus relief.

Defendant appealed to the Ninth Circuit Court of Appeals, contending that he was entitled to habeas relief because (1) the state had violated provisions of the IAD; (2) the delay in sentencing violated his Sixth Amendment right to a speedy trial; and (3) the delay in sentencing prevented him from appealing, which violated his due process rights. The Ninth Circuit held that the IAD's protections did not apply. *Lewis v. Ducharme*, 9 Fed Appx 12 (9th Cir), *cert den*, 534 US 999 (2001). As to his constitutional challenges, the court concluded that defendant had failed to present binding case law to support his position that the speedy trial provision of the Sixth Amendment extended to sentencing and that defendant had failed to cite any cases holding that excessive delay in an appeal violates due process. Accordingly, in light of defendant's burden to show that the Oregon court's decision to deny relief violated "clearly established Federal law," the court affirmed. *Id.*

In June 2005, defendant moved for speedy disposition of his Oregon criminal case, and, in June 2007, defendant moved for post-conviction relief and in the alternative moved to commence sentencing proceedings. The court did not resolve those motions until the state gained custody of defendant.

Finally, defendant completed his Washington sentence on September 12, 2008, and was transported to Oregon for sentencing. Defendant was sentenced on December 1, 2008, to serve a 10-year indeterminate sentence with a mandatory minimum of five years for use of a firearm in the commission of a felony. The sentencing court rejected all of defendant's arguments that the case against him in Oregon should

be dismissed as a consequence of the lengthy period of time—over 19 years—between his trial and the sentencing.

## II. ANALYSIS

On appeal, defendant raises three assignments of errors. First, defendant argues that the trial court erred in rejecting his motion to dismiss his charges, based on the state's violation of the IAD. Second, defendant argues that dismissal was required because the state violated his speedy trial rights under the Sixth Amendment and Due Process Clause under the Fifth Amendment, as applicable to the states through the Fourteenth Amendment. Finally, defendant contends that "[t]he trial court erred when [it] destroyed defendant's trial record." In a supplemental *pro se* brief, defendant makes additional arguments that we reject without discussion.

As a preliminary matter, the state responds that defendant's arguments under the IAD are barred by the doctrine of issue preclusion, or collateral estoppel. *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Issue preclusion bars future litigation on a subject issue only if the issue was actually litigated and essential to the final decision on the merits in the prior proceeding. *Id.* at 140; *see also Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (establishing the five requirements to issue preclusion). The state notes that defendant has litigated the first two assignments of error in a petition for habeas corpus relief in federal court. A habeas corpus proceeding is a civil proceeding. *Bates v. Czerniak*, 187 Or App 8, 13, 66 P3d 519, *rev den*, 335 Or 422 (2003). A prisoner is granted habeas relief in federal court if he can show that the state court's decision contradicts *clearly established* United States Supreme Court case law. 28 USC § 2254(d)(1). In this case, the federal court determined that there was no clearly established Supreme Court case law contrary to the state court's decision. What was essential to the federal court's decision was the absence of *clearly established* contradictory Supreme Court cases. The federal court never reached the merits of what we must decide: whether the state violated the IAD or defendant's constitutional rights, even in the absence of clearly established Supreme Court precedent. Therefore, the

issues in dispute were not actually litigated and essential to the final decision on the merits in the federal habeas case. Accordingly, we turn to the merits of defendant's first assignment of error based on violations of the IAD.

A.  *Interstate Agreement on Detainers*

The IAD is a congressionally sanctioned interstate compact among 48 states, the federal government, the District of Columbia, and various United States territories. *Alabama v. Bozeman*, 533 US 146, 148, 121 S Ct 2079, 150 L Ed 2d 188 (2001). We are bound by decisions of the United States Supreme Court on questions of interpretation of the IAD. *State v. Burss*, 316 Or 1, 4, 848 P2d 596 (1993). Defendant maintains that the state violated his rights under Article III and Article IV of the IAD, which describe two different procedures for the transfer of a prisoner to stand trial in another state. Article III involves a prisoner's request for transfer; Article IV does not.

Under Article III, when a state lodges a detainer against an out-of-state prisoner, the prisoner may request by written notice that he be transported to the state that lodged the detainer (the receiving state) for final disposition of the outstanding charges. ORS 135.775, Art III(a). To provide notice, "the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of imprisonment and the request of the prisoner for a final disposition" in the receiving state. *Id.* The receiving state has 180 days after the prisoner's request to bring the prisoner to "trial." *Id.*

Under Article IV, a receiving state that has an outstanding indictment, information, or complaint against another state's prisoner can request that the sending state— the state where the prisoner is currently incarcerated— transport the prisoner to the receiving state for "trial." ORS 135.775, Art IV(a). The sending state holding the inmate has 30 days to honor the request or to hold a contested hearing, and the receiving state has 120 days upon the inmate's arrival in the receiving state to commence the trial. ORS 135.775, Art IV(a) and (c). An inmate who is not brought to trial within the period provided in Article III or Article IV can have his or her case dismissed "with prejudice." ORS 135.775, Art V(c);

*State v. Ayers*, 203 Or App 683, 694, 126 P3d 1241, *modified on recons*, 207 Or App 668, 143 P3d 251, *rev den*, 342 Or 253 (2006).

In defendant's view, his assault conviction should be dismissed with prejudice because the state failed to promptly bring him to "trial"[4] when it failed to sentence him within the 180-day time period required under Article III and the 120-day time period required under Article IV. Defendant contends that he properly requested return to Oregon for final disposition of his trial under Article III when he filed two *pro se* motions to dismiss detainers in 1990.[5] Thus, he contends, the state's failure to sentence him within 180 days of those filings requires dismissal of his case. Under Article IV of the IAD, defendant asserts that the court failed to sentence him within 120 days of his return to Oregon for trial in January 1989. We address defendant's arguments under each portion of the IAD in turn.

Under Article III, the court did not fail to bring defendant to trial within the statutory time period because defendant never properly requested a transfer to Oregon. Defendant has the burden to establish that he provided proper written notice to the receiving state. *United States v. Moline*, 833 F2d 190, 192 (9th Cir 1987), *cert den*, 485 US 938 (1988). Nothing in defendant's motions to dismiss suggested that he was invoking his Article III right to return to Oregon for sentencing. Instead, his motions alleged that the 180-day time limit had expired because the state failed to sentence him before returning him to Washington. Nowhere in his motions did defendant formally request to be returned to Oregon for sentencing. Accordingly, defendant has not met

---

[4] We note that neither the United States Supreme Court nor the Oregon Supreme Court has ruled on whether the IAD applies to sentencing detainers. *See also State v. Summers*, 151 Or App 301, 948 P2d 754 (1997) (declining to address state's argument that the IAD does not apply to sentencing detainers because appellate court lacked jurisdiction to reach the merits of the case). For the purposes of this opinion, we assume without deciding that the IAD applies to sentencing detainers.

[5] In his opening brief on appeal, defendant stated that the motions were filed on April 23, 1989, and October 12, 1990. The record does not contain any motions filed in April 1989, but contains a "Motion for Remission of Forfeiture of Bail and Dismissal of Detainer" in April 23, 1990.

his burden under Article III to show that he properly requested return to Oregon.

We understand defendant's Article IV argument to be that, when Washington first sent him to Oregon to stand trial for his Oregon charges in January 1989, the court had 120 days to complete the trial and sentence him. Because the state returned defendant to Washington without sentencing him, defendant concludes that the state violated Article IV. We disagree with the major premise of defendant's argument, which assumes the applicability of the IAD to defendant when he appeared for trial in 1989.

Extradition and detainers under the IAD are distinct procedures for bringing a fugitive or other criminal defendant to justice in another jurisdiction. *Freeman v. Hand*, 158 Or App 489, 491, 974 P2d 788, *rev den*, 328 Or 594 (1999). Unlike extradition proceedings, the IAD by its terms applies only to persons currently serving a sentence of imprisonment. ORS 135.775, Art IV(a) (receiving state may lodge a detainer against a prisoner "who is serving a term of imprisonment" in the sending state); ORS 135.775, Art III(a) (applicable when, among other things, "a person has entered upon a term of imprisonment" in the sending state); *Freeman*, 158 Or App at 491. A detainer is premature if lodged against a person who is not serving a "term of imprisonment." *State v. Cox*, 12 Or App 215, 220, 505 P2d 360 (1973). In this case, when Washington first sent defendant to Oregon to stand trial in 1989, he had been found guilty for his Washington crimes by a Washington court but had not yet been sentenced. He was not serving a "term of imprisonment." Accordingly, defendant was sent to Oregon through an extradition, not a detainer under the IAD, in 1989.

Under Article IV, the 120-day time period did not begin until the state received defendant in 2008. The first time that the state requested an IAD transfer of defendant was in May 1989, but, as noted above, Washington refused to return defendant to Oregon until he completed his sentence. The state did not gain custody of defendant until September 12, 2008. At that point, the 120-day time period under Article IV began to run. Defendant was sentenced on December 1, 2008, within the 120-day time period. Thus, regardless of

whether a "trial" under the IAD includes the completion of sentencing, we conclude that there were no IAD violations.

## B. *Constitutional Rights*

We now turn to defendant's second assignment of error and address whether the state's actions violated defendant's rights under Article I, section 10, of the Oregon Constitution, under the Sixth Amendment right to a speedy trial, or under the Fifth Amendment right to due process applicable to the state through the Fourteenth Amendment. We begin with defendant's assertion of rights under the Oregon Constitution. *See State v. Campbell*, 299 Or 633, 647, 705 P2d 694 (1985) (generally, the courts address state constitutional claims before reaching federal constitutional claims).

### 1. *Article I, section 10*

Article I, section 10, of the Oregon Constitution provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

A defendant's constitutional right to the administration of justice without delay is not extinguished after a jury returns its verdict, but extends to every component of the prosecution, including imposition of a sentence in accordance with applicable law. *State v. McDonnell*, 343 Or 557, 572, 176 P3d 1236 (2007), *cert den*, 555 US 904 (2008).

To determine whether the state violated a defendant's constitutional right to justice without delay under Article I, section 10, we examine (1) the length of the delay, (2) the reasons for the delay, and (3) prejudice to the defendant. *Id*; *State v. Ivory*, 278 Or 499, 501-04, 564 P2d 1039 (1977) (adopting factors from the United States Supreme Court's Sixth Amendment speedy trial analysis in *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 23 101 (1972), for purposes of Article I, section 10). We look first at the length of the delay and the reasons for it.

The length of the delay between trial and sentencing in this case is over 19 years. The length of a delay in a criminal prosecution alone can constitute a violation of Oregon's constitutional speedy trial rights, if it shocks the conscience or if the state purposely caused the delay to hamper the defense. *McDonnell*, 343 Or at 572. In *McDonnell*, after numerous appeals and remands to the trial court, the defendant argued that the 14-year delay between his original trial and his sentencing alone violated his right to justice without delay. The court disagreed, determining that the 14-year delay between indictment and sentencing could not be attributed to the state's conduct but rather to the repeated appeals concerning complex legal issues arising from the trial court's application of Oregon's death penalty statutes. *Id.* at 573. Absent evidence of vexatious delay by the state, the court declined to dismiss the proceeding on the basis of the length of the delay alone. *Id.*

In this case, Oregon had agreed to return defendant to Washington immediately after his trial in 1989, pursuant to the Washington court's release order. Defendant has not presented evidence that the state engaged in dilatory or vexatious conduct when it sent defendant back to Washington in accordance with the release order. In light of *McDonnell*, because of the absence of evidence of dilatory tactics or any improper motivation on the part of the state, and also because of defendant's own significant contribution to the delay as described below, we conclude that "the delay does not shock the judicial conscience." *Id.* at 573. We decline to dismiss defendant's proceedings based solely on the unusual, substantial length of the delay in his sentencing alone.

Defendant argues that the state should not have sent defendant to Washington until after he was sentenced, and by doing so, the fault for the lengthy delay of defendant's sentencing falls solely on the state.[6] We agree with the state

---

[6] Defendant also asserts that, by sending him to Washington following the jury's verdict, the state violated the trial court's order that he remain in custody. However, defendant's opening brief states and the record reflects that he signed a waiver of extradition to return to Washington on February 2, 1989; thus, defendant's assertion lacks merit because he consented to his removal from Oregon's custody.

that the record establishes that the length of the delay cannot be fairly attributed to the state.

In April 1989, when defendant was to appear for his sentencing in Oregon, and at a time when the Washington trial court was prepared to allow his transfer, the sentencing court noted that defendant "refused to be transported to Multnomah County, Oregon." Then, after returning defendant to Washington pursuant to the release order and defendant's refusal to be transported back to Oregon for sentencing, the state had no control over whether Washington would return him to Oregon. The state had no reason to believe that Washington would not require defendant to return to Oregon when it sent defendant to Washington in February 1989. In addition, the state did not sit on its hands once defendant did not appear for sentencing. It promptly—the very next month—attempted to retrieve defendant by lodging a detainer against him under Article IV of the IAD, but, as noted above, the Washington courts ruled that the IAD did not apply to sentencing proceedings. The state simply could not force Washington to return defendant to Oregon for sentencing.

Moreover, there is evidence in the record that defendant actively and knowingly opposed the state's detainer for his return to Oregon for years. Under Article III of the IAD, once a receiving state lodges a detainer against a prisoner, that prisoner can request a transfer to the receiving state for disposition of outstanding charges, ORS 135.775, Art III(a). But the record shows that defendant, after being apprised of his right to request return to Oregon under Article III of the IAD, resisted transfer to Oregon once he began serving his prison sentence in Washington. He argued that Oregon's detainer should be dismissed with prejudice to the Washington Court of Appeals, through numerous *pro se* motions to the Multnomah County courts, on an earlier appeal to this court, through a mandamus petition with the Supreme Court, and through a federal habeas petition in federal court. Based on those circumstances, we do not attribute the blame for the delay to the state. We therefore move on to determine whether defendant was prejudiced by the delay.

A defendant can demonstrate prejudice from the lack of a speedy trial through (1) the damage arising from lengthy pretrial incarceration; (2) the anxiety and public suspicion resulting from the public accusation of the crime; and (3) the hampering of his ability to defend himself at trial. *State v. Harberts*, 331 Or 72, 93, 11 P3d 641 (2000). The damage arising from the lengthy incarceration, as explained above, is primarily attributable to defendant's conviction in Washington and defendant's refusal to waive extradition and to return to Oregon for sentencing under Article III of the IAD. Moreover, defendant's anxiety is likely minimal considering that defendant had already been found guilty and was not suffering from the reputational taint that accompanies "living under a cloud of anxiety, suspicion, and * * * hostility." *Barker*, 407 US at 533 (describing disadvantages for accused defendants who cannot obtain a speedy trial).

The remaining issue is whether the passage of time has hampered defendant's ability to defend himself. The state concedes that part of the record has been lost due to the length of the delay. Indeed, there is no transcript of the trial because the court reporter passed away and only kept records of transcripts for the last 10 years. In addition, the trial court judge and defendant's trial attorney are deceased and the prosecutor has only a vague recollection of the case. Loss of the trial transcript alone would certainly prevent defendant from assigning error to rulings that occurred during his trial. Thus, defendant asserts that he has been unable to assign error to the trial court's denial of defendant's *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986), challenge during jury selection. However, defendant had an opportunity to obtain a copy of the transcript himself, even as a self-represented prisoner. In January 1993, when defendant requested copies of the court records, the court staff included in its response information about how to contact the court reporter to obtain a copy of the trial transcript. Had defendant requested the transcript in 1993—within the 10-year period when the court reporter retained transcript notes—he would have preserved the record for appeal. Instead, defendant's failure to obtain his own transcript after the court told him how to do so lessens defendant's prejudice from the delay. Moreover, defendant's resistance to return to

Oregon after the state first lodged the detainer in April 1989 prevented defendant from being sentenced, obtaining a final judgment, and appealing his case when the transcript was still available. Based on the circumstances in this case, we conclude that the state did not violate defendant's constitutional rights to a trial without delay under Article I, section 10.

### 2. *Sixth Amendment*

In the alternative, defendant argues that the state violated his speedy trial rights under the Sixth Amendment. The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The speedy trial analysis under the Sixth Amendment requires balancing the same factors under the Article I, section 10 analysis—(1) length of the delay, (2) reasons for the delay, and (3) prejudice to the defendant—but contains an additional factor, whether defendant asserted his right. *Johnson*, 342 Or at 615 (citing the four-factor balancing test announced in *Barker*, 407 US at 530, for Sixth Amendment speedy trial violations).

In this case, defendant did not assert his right to a "speedy trial" by seeking return to Oregon for sentencing until 2005.[7] After the state attempted to procure his return to Oregon for sentencing under Article IV of the IAD and failed, defendant filed numerous motions in the trial court seeking dismissal of his conviction, but he never requested that the Oregon court sentence him until then. He petitioned the federal district court for habeas relief in dismissing his conviction, but did not request that the federal court compel the state court to sentence him. Indeed, the district court noted that it was within defendant's power to move for sentencing in the Oregon trial court. He nevertheless did not move for sentencing until 2005—16 years after he was found guilty. By that time, whatever prejudice that could have occurred (*i.e.*, loss of the transcript) already had occurred. The court

---

[7] The record shows that on June 29, 2005, defendant filed a "Motion for Speedy Disposition." Although the motion begins, like many of his other *pro se* motions, with an argument for dismissal of the case, he does make a request on page five for the trial court to transfer him to Oregon within 90 days to sentence him, or to dismiss the charges, or do whatever the court deems appropriate.

reporter already had purged her notes for the trial before anyone asked for a transcript. Accordingly, based on defendant's failure to assert his right until 2005, we conclude that the state did not violate defendant's Sixth Amendment right to a speedy trial. *See State v. Fleetwood*, 186 Or App 305, 322, 63 P3d 42, *rev den*, 336 Or 125 (2003) (rejecting the defendant's Sixth Amendment speedy trial contention because he never asserted his rights to a speedy trial).[8]

### 3. *Due process*

Defendant also contends that the state's action— the failure to sentence defendant until he returned from Washington—caused an unreasonable delay in his ability to appeal, thereby violating his right to due process under the Fifth and Fourteenth Amendments. The United States Supreme Court and Oregon Supreme Court have not addressed a claimed due process violation based on a delay in sentencing. Most federal circuit courts that have considered the issue, however, have applied the Sixth Amendment speedy trial factors announced in *Barker*, 407 US at 528-29, to determine whether a due process violation has occurred for delays in sentencing. *See United States v. Tucker*, 8 F3d 673, 676 (9th Cir 1993), *cert den*, 510 US 1182 (1994) (applying the four factors in *Barker* to determine when "extreme delay" violates due process); *Burkett v. Cunningham*, 826 F2d 1208, 1221-22, (3d Cir 1987) (applying the four-part *Barker* test to analyze due process violations after recognizing that the Fifth and Tenth Circuits apply the same test); *United States v. Johnson*, 732 F2d 379, 381-82 (4th Cir), *cert den*, 469 US 1033 (1984) (applying the *Barker* test to two-year delay in preparing transcript for appeal); *Rheuark v. Shaw*, 628 F2d 297, 303 (5th Cir 1980), *cert den*, 450 US 931 (1981) (determining that the reasons for appellate delay are analogous to the motives under the Sixth Amendment right to a speedy trial, and applying the four-factor test under *Barker*). The

---

[8] The United States Supreme Court has not expressly decided whether constitutional speedy trial rights apply to sentencing. However, because we conclude that defendant failed to assert the right, for purposes of this appeal, we assume without deciding that the speedy trial guarantee extends to sentencing. *See Pollard v. United States*, 352 US 354, 361, 77 S Ct 481, 1 L Ed 2d 393 (1957) ("We will assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment.").

Second Circuit, in *United States v. Ray*, 578 F3d 184, 199 (2d Cir 2009), *cert den*, ___ US ___ , 130 S Ct 2401 (2010), applied a different test based on due process violations from preindictment delay that the Supreme Court announced in *United States v. Lovasco*, 431 US 783, 789, 97 S Ct 2044, 52 L Ed 2d 752 (1977). The Second Circuit held that, "[i]n order to determine whether a defendant has been deprived of her due process right to a prompt sentencing, we must 'consider [1] the reasons for the delay as well as [2] the prejudice to the accused.'" *Ray*, 578 F3d at 199 (quoting *Lovasco*, 431 US at 790).

This case does not require us to determine which test the United States Supreme Court is likely to apply, because under either test, defendant's due process argument fails. We applied the *Barker* four-factor test to defendant's Sixth Amendment argument above and concluded that there is no Sixth Amendment violation. Accordingly, applying the same *Barker* test, defendant's due process claim fails.

If we apply the Second Circuit's test adopting *Lovasco*'s two-part balancing test, defendant's due process claim must also fail. Under that test, the court examines (1) the defendant's prejudice from the delay, and (2) the reasons for the delay, balancing the state's culpability against the delay. *Ray*, 578 F3d at 199-200. Defendant was prejudiced by the delay because of defendant's inability to obtain a record of the trial. The court reporter is deceased and purged her notes 10 years after the trial. The trial court judge and defendant's trial counsel also passed away and the prosecutor does not remember much from the case.

However, as we discussed in resolving defendant's speedy trial arguments above, most of the fault for the delay can be attributed to defendant. Based on governing Washington law, Washington refused to return defendant to Oregon after the state submitted an Article IV IAD request to return defendant for sentencing. Defendant is culpable because he decided to "do nothing in regards to the detainer." He did not formally request his sentencing under Article III of the IAD. He did not waive extradition when the Washington trial court would have permitted him to be transported to Oregon for sentencing. Moreover, after the Washington

courts barred Washington from sending defendant to Oregon, defendant did not immediately request to be sentenced to preserve his trial transcript for appeal. Instead, he filed numerous *pro se* motions for dismissal. He did not request sentencing until 2005, 16 years after he was found guilty, and six years after the court reporter purged her transcript. Based on those facts, we conclude that the 19-year delay between defendant's verdict and his sentence did not violate defendant's rights to due process.

C. *Destruction of the Trial Transcript*

We turn to defendant's final assignment of error, namely, whether "the trial court erred when [it] destroyed defendant's trial record." We understand defendant's argument to be that he is entitled to a reversal under ORS 19.420(3) because the trial record was lost through no fault of his own. That statute provides:

> "Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, *through no fault of the appellant*, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."

ORS 19.420(3) (emphasis added). The state concedes that the majority of defendant's trial record was lost or destroyed, including the court reporter's notes and transcript. The state contends that the loss of the record is attributable to the passage of time, which would not have occurred but for defendant's resistance to his return to Oregon. We agree with the state.

As we concluded above, defendant had ample opportunity to return to Oregon to be sentenced but chose instead to oppose the state's efforts to return him to Oregon. Moreover, he failed to obtain a copy of his transcript after the court explained to him how to do so. Based on those facts, we cannot say that his appeal cannot be prosecuted through no fault of the appellant. We decline to exercise our discretion under ORS 19.420(3) to reverse and to remand the proceeding to the trial court.

Affirmed.