Argued and submitted October 16, 2013, affirmed April 2, petition for review denied October 2, 2014 (356 Or 397)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHANE DESS SHUMATE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR8600945; A149886

330 P3d 29

Peter Gartlan, Chief Defender, argued the cause for appellant. With him on the brief was Office of Public Defense Services.

Timothy A. Sylwester, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

### HADLOCK, J.

In 1987, defendant pleaded guilty to attempted aggravated murder and ex-convict in possession of a firearm. The trial court imposed a 30-year dangerous-offender sentence with a 15-year minimum term of confinement by way of a document titled simply "ORDER" (the 1987 sentencing order). At around the same time—in a case that is not implicated by this appeal—defendant was sentenced to life imprisonment with a 30-year minimum in a separate case in which he pleaded guilty to several crimes including the aggravated felony murder of his father, and he began serving that term. Nearly 25 years later, the Oregon Department of Corrections (DOC) declined to include the dangerous-offender sentence on defendant's *attempted* aggravated murder conviction when it calculated defendant's overall prison term. Accordingly, the state asked the trial court to enter a new judgment generally reflecting the terms of the 1987 sentencing order. The trial court did so in 2011 and defendant now appeals, seeking a remand for a new sentencing hearing.

The unusual procedural history of this case presents us with several questions. First, we must determine whether the 1987 sentencing order was a final judgment from which defendant could have—and should have—appealed. The state contends that it was and that, therefore, defendant cannot belatedly challenge his dangerous-offender sentence by appealing the judgment entered in 2011. In addition to that jurisdictional issue, the case also presents the questions (1) whether the trial court had authority, in 2011, to enter a general judgment of conviction and sentence that generally reflects the terms described in the 1987 sentencing order, (2) whether defendant properly could appeal that judgment, and (3) if so, whether defendant has established that we should reverse that judgment and remand for resentencing. For the reasons that follow, we conclude that we have jurisdiction to consider defendant's appeal, and we affirm the 2011 judgment.

For purposes of this appeal, the facts are undisputed. In September 1986, defendant fired a shotgun at a law enforcement officer. As a result of that shooting and

other alleged criminal acts, defendant was charged in this case—Clackamas County case number 86-945—with attempted aggravated murder with a firearm, first-degree burglary with a firearm, and ex-convict in possession of a concealable firearm with a firearm.

A few days after defendant committed the crimes described above, defendant kidnapped and murdered his father. Defendant was charged in a separate criminal case—Clackamas County case number 86-946 (the aggravated murder case)—in relation to that killing and, in mid-1987, pleaded guilty to crimes including aggravated felony murder with a firearm, ex-convict in possession of a firearm with a firearm, and unauthorized use of a vehicle (UUV) with a firearm. Defendant was sentenced to life imprisonment with a 30-year minimum period of confinement on the murder conviction. In addition, the trial court imposed five-year sentences with 30-month minimum periods of incarceration on the possession and UUV convictions, to run consecutively to all other sentences.

Defendant later pleaded guilty to two of the charges in this case: attempted aggravated murder and ex-convict in possession of a firearm. The state then moved for an order declaring defendant to be a dangerous offender under ORS 161.735, based in part on his convictions in the aggravated murder case.[1] The trial court ordered defendant to submit to a dangerous-offender evaluation and scheduled a sentencing hearing, which eventually occurred on December 18, 1987. At some point during the hearing, the court explained its intent to sentence defendant as a dangerous offender:

> "The Court makes the following findings pursuant to ORS 161.725, which is the dangerous offender statute we have been talking about this morning. Based upon the testimony of [two doctors], the presentence investigation and all the others in the case, I find that you suffer from a

---

[1] At that time, a court could sentence a defendant as a dangerous offender if the court found "that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody [was] required for the protection of the public" and the court also made other predicate findings, including that the defendant was "suffering from a severe personality disorder indicating a propensity toward criminal activity." ORS 161.725(1), (2) (1985). The procedures for dangerous-offender examinations and sentencing were set out in ORS 161.735 (1985).

severe personality disorder indicating a propensity toward criminal conduct. I find further that first because of your dangerousness, an extended period of confinement is necessary to protect the public.

"I find that you are being sentenced for a Class A felony. I further find that you are being sentenced for a felony that seriously endangered the life or safety of another and that you have a previous felony conviction. I find further, as previously indicated, that you suffer from a severe personality disorder indicating a propensity toward criminal activity. These findings in the Court's opinion justify a conclusion that the provisions of ORS 161.725 apply.

"The Court further finds, pursuant to ORS 161.610, that there was a felony involving the use of a firearm. In short, you tried to shoot a police officer with a shotgun.

"The Court, therefore, based upon that, imposes sentence as follows:

"Having found that you are a dangerous offender, you will be sentenced to the custody of the State Corrections Division for a period of 30 years. I will impose a minimum sentence of 15 years. The Court finds that this is not part of the same course of conduct for which you were previously sentenced, and I will impose this sentence on a consecutive basis."

The court also imposed a concurrent five-year "gun minimum" and a concurrent sentence on the possession conviction.

After announcing that sentence, the court informed defendant that he had a right to appeal the sentence by filing a notice of appeal within 30 days. Apparently addressing defendant's attorney, the judge also asked that defendant be provided with a printed notice of appeal rights to sign. The court then asked defendant if he understood his right to appeal, and defendant answered affirmatively. Defendant and his attorney signed a notice of appeal rights on the same day as the sentencing hearing.

The trial court entered an order—the 1987 sentencing order—on December 30, 1987, memorializing defendant's sentence in this case; the court attached three transcript pages from the December 18 sentencing hearing to that order that included the court's statements that are quoted above.

On January 13, 1988, the state moved for an order dismissing the remaining charge in this case, for first-degree burglary with a firearm. The court entered an order dismissing that charge on January 15, 1988. At some point thereafter, recordings of the 1987 sentencing hearing apparently were destroyed. The only evidence that remains from that hearing are the three transcript pages attached to the 1987 sentencing order. Defendant did not attempt to appeal any of the orders that were entered in the 1980s.

In the fall of 2010, defendant was scheduled for a hearing before the Board of Parole and Post-Prison Supervision in the aggravated murder case. A prosecutor who planned to represent the state at that hearing discovered that the DOC had no record of any sentence in this case and that, as a result, defendant's "face sheet" did not reflect the attempted aggravated murder conviction and associated dangerous-offender sentence. The prosecutor sent the DOC a certified copy of the 1987 sentencing order, including the attached transcript pages, and asked the DOC to "adjust [defendant's] release date accordingly." The DOC declined to do so, asserting that it could not "act on the order and transcript in Clackamas County case no. 86-945" and would "require a new sentencing judgment that clearly imposes the 30-year sentence for attempted aggravated murder before [it could] add the sentence to his DOC record."

The state subsequently filed a motion asking the trial court "to amend the sentencing document in this case, entitled 'ORDER', signed by Judge Sid Brockley on December 30, 1987, to clarify that the order is, in fact, a sentence order." The state attached the 1987 sentencing order and associated transcript pages to that motion. In addition, the prosecutor submitted an affidavit in which he described how the 1987 sentencing order had been produced:

"At the time of the sentencing, it was the local practice for the State to provide to the court the written sentencing documents, typed by a District Attorney secretary, which were ordinarily entitled 'SENTENCE ORDER'. In this instance, the State obtained a transcript of the sentencing hearing. That part of the transcript wherein the Court sentenced the defendant was attached to and incorporated into a document entitled 'ORDER', which was subsequently, on December 30, 1987, signed by Judge Brockley."

The court held a hearing on the state's motion on October 4, 2011. The state asked the trial court to "amend the judgment" in this case "essentially putting it in the form that the Department of Corrections will recognize." Defendant objected, asserting a lack of statutory or constitutional authority "to allow almost a 27-year-old order to be amended." Defendant asserted that such an amendment would adversely affect his "parole status and release status with the institution." In response, the state asserted that the trial court had inherent authority to correct any error; it also referred to ORS 138.083, which provides that a "sentencing court retains authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment." ORS 138.083(1)(a). Speaking on his own behalf, defendant also asserted that he wanted a new dangerous-offender evaluation, citing what he characterized as a good record while incarcerated. Defendant also noted that he "didn't have a jury trial on the dangerous offender" findings in 1987.

The trial court granted the state's motion, explaining that it intended to "put into writing a form of judgment that Judge Brockley handed down on December 18, 1987," as memorialized in the December 30, 1987, sentencing order. The court explained that it was "not making any new decisions or increasing any sentence that you hadn't already been convicted or sentenced" for. The court further explained that defendant did have a right to contest the dangerous-offender finding in 1987 and that his lawyer had argued against it.

Following that hearing, the trial court entered a general judgment of conviction and sentence in this case. That judgment reflects defendant's conviction, following guilty pleas, on one count of attempted aggravated murder with a firearm and one count of ex-convict in possession of a firearm with a firearm as well as the dismissal of the charge of first-degree burglary with a firearm. With respect to sentencing, the judgment reflects a 360-month dangerous-offender sentence on the attempted-murder conviction, with a 15-year minimum term of incarceration and

a 60-month "gun minimum," to be served consecutively to the sentence imposed in the aggravated murder case. The judgment includes the following dangerous-offender finding: "The defendant is being sentenced for a Class A felony, and the Court finds that the defendant is suffering from a severe personality disorder indicating a propensity towards crimes that seriously endanger the life or safety of another[.]" Finally, the judgment reflects a 60-month concurrent sentence for ex-convict in possession of a firearm. The trial court signed the judgment on October 4, 2011, *nunc pro tunc* to December 30, 1987. Defendant appeals from that judgment.

The state first asserts that defendant's appeal must be dismissed because defendant could have appealed the 1987 sentencing order, but failed to do so. The state observes that, at the time defendant originally was sentenced, "Oregon courts operated with what might be termed a relaxed practice as to the form a criminal judgment must take." The state contends that the 1987 sentencing order was final, in that it memorialized a conviction and sentence, and therefore was an appealable judgment under the law then in effect. In the alternative, the state argues that, even if the order was not itself appealable, if defendant had attempted to appeal it, this court would have given the trial court leave to enter an appealable judgment under *former* ORS 19.033(4) (1985), *renumbered as* ORS 19.270(4) (1997). Either way, the state contends, defendant should have appealed in 1987 and cannot properly appeal now from the 2011 judgment which, in the state's view, does not substantively change the 1987 order. Accordingly, the state concludes, we must dismiss defendant's appeal. Defendant asserts that he could not have appealed the 1987 order "because there was no judgment," even under the standards for judgments then in effect. Accordingly, he contends, the 2011 judgment is the first appealable judgment in the case and his present appeal is timely. We agree with defendant.

We begin our analysis by evaluating the statutes that were in effect when the trial court entered the sentencing order in December 1987. At that time, a defendant could "appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court." ORS 138.040 (1987). Neither the word "judgment" nor the term "judgment on a conviction"

was defined in ORS chapter 138. Instead, courts determined whether a court document qualified as a "judgment on a conviction" in a criminal case by considering whether the document reflected a criminal conviction and sentence. *See Vasquez v. Courtney*, 272 Or 477, 479, 537 P2d 536 (1975) ("A 'judgment' in a criminal case constitutes a judicial determination of guilt based on a verdict or plea of guilty and imposes a penalty for the transgression committed by the defendant."); *see also State v. Bonner*, 307 Or 598, 600-01, 771 P2d 272 (1989) (a "judgment on a conviction" must be in writing). Moreover, the inquiry was a practical one, based on the substance of the judicial determination embodied in the document; courts gave little weight to whether the document was explicitly titled a "judgment" or was captioned in some other way.[2] *See, e.g., State v. McDonnell*, 306 Or 579, 586, 761 P2d 921 (1988) ("[U]nlike a civil case in which the document finally disposing of a case is required to be labeled 'judgment,' *** there is no requirement that the final document in a criminal case generally or in a death penalty case bear any special title."); *State v. Curran*, 291 Or 119, 124, 628 P2d 1198 (1981) ("The judgment on a conviction in this case was embodied in the document entitled 'SENTENCE' ***."). As this court explained,

> "[t]he title of a document, in this area of the law, is less important than the contents in terms of disposing of the particular matter at issue. A finding of guilty in a criminal case does not dispose of it. There must be some disposition made such as incarceration, probation or discharge. If the court's action memorialized in the documents smells, looks and quacks like a judgment, we should treat it as a judgment."

*State v. Bateman*, 95 Or App 456, 461-62, 771 P2d 314, *rev den*, 308 Or 197 (1989).

---

[2] At that time, ORS 138.005 did provide that, "[a]s used in ORS 138.010 to 138.310, unless the context requires otherwise, the terms defined in ORS 19.005 have the meanings set forth in ORS 19.005." ORS 138.005 (1987). ORS 19.005 (1987), in turn, defined "[j]udgment" as "judgment, decree, or appealable order, as provided in ORS 19.010." That latter statute further specified the types of orders and decrees that would "be deemed a judgment or decree." ORS 19.010 (1987). However, despite the cross-reference from ORS 138.005 (1987), appellate courts do not appear to have looked to those chapter 19 statutes to determine what orders qualified as judgments in criminal cases.

Accordingly, we agree with the state up to a point: lack of a formal denomination as a "judgment" would not—standing alone—have prevented the 1987 sentencing order from qualifying as an appealable judgment. However, defendant points to another aspect of that order that, he asserts, resulted in the order not being appealable as a judgment. Specifically, defendant contends that the order did not "contain the substantive information that is typically found in a criminal judgment, such as the type of adjudication, the crime of conviction, and the sentence." The state responds that the transcript pages incorporated into the order reference "the sentence imposed on the attempted aggravated murder" and the consecutive term on "the charge of ex-convict in possession." In the state's view, those references suggest that, although defective in form, the order adequately reflected the charges on which defendant had been convicted and the sentences imposed.

We need not determine whether the 1987 sentencing order adequately memorialized defendant's convictions and sentences on the two counts on which he was convicted, however, because the order could not qualify as an appealable judgment for a different reason: lack of finality. Under the law as it existed when defendant entered his plea, a document announcing a conviction and sentence in a criminal case—no matter how it was captioned—qualified as an *appealable* judgment only if it was final, that is, if it fully resolved all charges in the case. *See State v. Handley*, 116 Or App 591, 593 n 1, 843 P2d 456 (1992) (a judgment that "disposed of only two of the three counts *** was not final for the purposes of appeal"). *Cf. Bonner*, 307 Or at 600-01, 600 n 1 (documents indicating that the defendant had been convicted of burglary and imposing sentence were not appealable judgments because the documents also stated that the trial court intended to impose restitution after a future hearing); *State v. Smith*, 100 Or App 284, 286-87, 785 P2d 1081 (1990) (judgment that did not resolve all charges brought against defendant was nonetheless final because the unresolved counts had been severed and, after severance, those "counts were separate cases"). Here, the 1987 sentencing order resolved only two of the three counts with which defendant had been charged; dismissal of the third count

(first-degree burglary) did not occur until January 1988, after the sentencing order had been entered. Because the 1987 sentencing order did not resolve all charges brought in this case, it was not a final, appealable judgment.

Given that no final judgment was entered in 1987, the general judgment of conviction and sentence entered in 2011 is the first judgment that triggered defendant's right to appeal within 30 days of its entry. Defendant's timely appeal from that 2011 judgment is properly before us, and we reject the state's contention that the appeal should be dismissed.

The state next argues that, even if this court concludes that defendant's appeal is properly before us, we should affirm the trial court's judgment because the court had authority to amend the 1987 sentencing order to make it speak its truth by captioning it as a judgment. Defendant, for his part, contends that the trial court lacked authority to enter the judgment, either as an amended or corrected judgment, because the trial court purported to act pursuant to ORS 138.083, but "[w]ithout an initial judgment, there is no corrected judgment." Given our determination that no final judgment was entered in 1987, however, the 2011 general judgment neither amends nor corrects any previous judgment. Rather, it stands alone as the *only* judgment ever entered in this case. Consequently, it does not matter whether ORS 138.083 would have authorized the trial court to amend or correct the 1987 judgment had that earlier judgment been final. In fact, what the trial court accomplished in 2011 was entry of the first final judgment in the case, even if the court may have misapprehended the precise significance of that judgment.

Defendant also suggests, without elaboration, that the trial court erred by entering the 2011 judgment because more than 20 years had passed since defendant entered his plea. Defendant cites no authority limiting the time within which a trial court may enter judgment on a criminal conviction, and we are aware of none. The mere passage of time did not preclude the trial court from entering the general judgment of conviction and sentence in 2011.

Finally, defendant asserts that he is prejudiced by entry of the 2011 judgment—specifically, the dangerous-offender finding—because the records from the 1987 sentencing hearing have been destroyed and he now has no way to meaningfully challenge his designation as a dangerous offender:

> "This is an unusual case due to the significant passage of time between the plea in 1987 and the sentencing hearing in 2011. As the case currently presents in this court, defendant stands subject to a 360-month dangerous offender sentence with no evidentiary record to support the dangerous offender designation. Other than the three-page excerpt the state submitted with its motion, the record of the evidentiary hearings has been destroyed. It is improper to sustain a 30-year sentence when the evidentiary basis for the sentence cannot be reviewed or contested on appeal."

Defendant does not ask us to reverse the 2011 judgment because of the lack of a record supporting the dangerous-offender designation.[3] Indeed, he makes no attempt to establish that the trial court erred in 1987 when it imposed a dangerous-offender sentence on his conviction for attempted aggravated murder. Rather, defendant's primary argument is that we should remand for a new sentencing hearing pursuant to ORS 19.420(3), which provides:

> "Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."

Defendant asserts that, because he is not to blame for the destruction of the 1987 record and it is not feasible for him to reconstruct that record, we should remand pursuant to that statute. Defendant acknowledges that, generally, an appellant seeking a remand under ORS 19.420(3) has the burden to make a *prima facie* showing of error below, but he

---

[3] We note that any such argument would not be preserved for appellate review, as defendant did not argue at the 2011 hearing that the court lacked authority to enter a judgment in the absence of an evidentiary record supporting the dangerous-offender sentence.

contends that the extraordinary passage of time in this case means that we should not hold him to that requirement:

> "That [*prima facie* showing of error] rule contemplates an appeal in the normal course of events, namely, when the attorneys, witnesses, and judge are largely available and their memory of events is unaffected by a significant passage of time. However, the circumstances in this case fall well outside the general rule. The state was the moving party for the 2011 sentencing hearing and bore the obligation to make a record to support the dangerous offender sentence. Based on the passage of time and the severity of the sentence, the judgment should be reversed and the case remanded for resentencing. ORS 19.420(3)."

In response, the state argues that the loss of the 1987 record is attributable to defendant, because a transcript of the hearing could have been prepared had he appealed from the December 1987 sentencing order. The state also contends that defendant has not made the sort of *prima facie* showing of trial-court error that the appellate courts ordinarily require of appellants who seek a remand under ORS 19.420(3), which the state characterizes as a "discretionary remedy." Moreover, the state contends that we should decline to exercise any discretion we may have to remand the case for resentencing, given defendant's experience in the criminal justice system, the fact that he was repeatedly advised of his appeal rights in this case in 1987, and the lack of any claim by defendant that he "misunderstood the process or the advice of rights about how to appeal" or that he expressed any desire to appeal in 1987. At bottom, the state contends, defendant expressed no desire to appeal for decades and now belatedly seeks a windfall in the form of having a jury determine whether he is a dangerous offender:

> "Defendant cannot have been oblivious to the plain fact of his lengthy sentences, which were imposed following contested sentencing hearings at which he was represented by counsel. The entry of his guilty pleas suggests defendant may simply have wished to wrap up the cases and be done with them. There is no indication whatsoever that defendant even considered challenging his convictions on appeal, until a window of opportunity presented itself in 2010, when the flaws in the judgment came to light. Only at that time did defendant suggest he might now want a jury

trial as to his dangerous offender status, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004)."

Finally, the state argues, if this court does order a remand, it should be limited to a resentencing proceeding at which "the state may elect whether to have defendant reassessed for dangerous offender criteria, or whether merely to present information on which the trial court could impose 'ordinary' indeterminate sentences for the offenses of attempted aggravated murder and felon in possession of a firearm."

We agree with the state's assertion that ORS 19.420(3) gives this court discretion whether to remand for resentencing under the circumstances present here. The statute provides that an appellate court "may" reverse and remand when the record of a case has been destroyed, "as justice *may* require." ORS 19.420(3) (emphasis added); *see also State v. Lewis*, 249 Or App 480, 499, 278 P3d 51, *rev den*, 352 Or 564 (2012) (referring to ORS 19.420(3) as giving this court discretion whether to remand). Moreover, although an appellant ordinarily has the burden to make a *prima facie* showing of trial-court error, under the extraordinary circumstances present here, we believe that the absence of such a showing does not absolutely preclude us from remanding, but rather informs whether we should exercise our discretion to do so. *See Smith v. Custom Micro, Inc.*, 311 Or 375, 378-79, 811 P2d 1371 (1991) (in discussing the predecessor statute to ORS 19.420(3), the Supreme Court explained that the requirement of a *prima facie* showing of error is one of the considerations that should "guide [an appellate court's] discretion under the statute in choosing whether to put the parties and the judicial system to the time and expense of another trial without a finding of reversible error").

In this case, we conclude that justice does not require a remand for resentencing. First, defendant has not identified any flaw in the 1987 sentencing proceeding and has not identified any circumstances suggesting that a dangerous-offender sentence was inappropriate or unjustified. Although defendant's failure to make a *prima facie* showing of error does not deprive us of authority to remand

under ORS 19.420(3), it weighs heavily in our decision not to exercise that discretionary authority. We are hard-pressed to find a reason why the judicial system and the victims of defendant's violence should bear the burden of a resentencing hearing when defendant has not even *claimed* that the 1987 trial court committed error in determining that he was a dangerous offender and that he should be sentenced accordingly.

Second, the fact that defendant apparently made no attempt to challenge his sentence before 2011 supports our view that no miscarriage of justice occurred in 1987. Although the trial court was mistaken when it told defendant on December 18, 1987, that he had only 30 days in which to file an appeal, neither the prosecutor nor defendant's attorney suggested that the advice of appeal rights was premature because no final judgment had yet been entered. And defendant does not claim, even now, that the lack of an appeal from the 1987 sentencing order was based on some prescient understanding—an understanding that escaped the trial court and both lawyers—that the order was not a final, appealable judgment. Had defendant believed that the trial court erred in announcing a dangerous-offender sentence in 1987, and had defendant then wished to challenge his dangerous-offender designation, it is likely that those facts would somehow be reflected in the record, perhaps through a premature attempt to appeal the 1987 order or in the form of a current assertion by defendant that he would have appealed that order but for an understanding that it was not appealable. But the record reflects nothing of the sort. The complete absence of any pre-2011 indication that defendant wished to challenge his dangerous-offender status cuts against exercise of this court's discretion to remand this case for a new sentencing hearing.

Put succinctly, this is not a case in which justice requires reversal and remand for resentencing. Accordingly, we decline to exercise our discretion to order that remedy under ORS 19.420(3).

Affirmed.