*Lee Boyd Malvo v. State of Maryland*, No. 1568, September Term, 2024. Opinion by Ripken, J.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – GUILTY PLEA**

Although an interlocutory order denying a defendant the right to further participation in a plea agreement may be appealable under the collateral order doctrine if the order negates a benefit that, once lost, cannot not be regained, the same does not apply where there was no plea agreement.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – GUILTY PLEA – SEPARATE FROM THE MERITS**

An interlocutory order denying a motion to withdraw a guilty plea that has already been accepted is not appealable under the collateral order doctrine because it is not separate from the merits of the ultimate determination of guilt or innocence.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – GUILTY PLEA – REVIEWABLE AFTER FINAL JUDGMENT**

An interlocutory order denying a motion to withdraw a guilty plea that has already been accepted is not appealable under the collateral order doctrine because it is reviewable at the conclusion of the case following sentencing.

**APPELLATE JURISDICTION – COLLATERAL ORDER DOCTRINE – DELAY IN SENTENCING – DUE PROCESS**

An interlocutory order that delays sentencing is not appealable under the collateral order doctrine because it is reviewable at the conclusion of a case. Due process concerns regarding a delay in sentencing are likewise reviewable following the entry of a final judgment because the reviewing court will weigh the defendant's prejudice from the delay, and the reasons for the delay, balancing the state's culpability against the delay.

Circuit Court for Montgomery County
Case No. 102675C

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1568

September Term, 2024

_____

LEE BOYD MALVO

v.

STATE OF MARYLAND

_____

Zic,
Ripken,
Eyler, James R.,
      (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Ripken, J.
_____

Filed: May 1, 2026

*Tang, Rosalyn J. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

In 2006, Lee Boyd Malvo ("Appellant") pled guilty to six counts of first-degree murder, constituting all counts in the indictment, in the Circuit Court for Montgomery County, Maryland. *Malvo v. State*, 481 Md. 72, 78 (2022). He was sentenced to the maximum sentence of six terms of life in prison without the possibility of parole, which were to run consecutively to each other and consecutively to the four life sentences he was serving in Virginia. *Id.* Based on the development of Eighth Amendment jurisprudence concerning the sentencing of juvenile offenders that culminated in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), Appellant, in 2017, filed a motion to correct an illegal sentence, in which he requested a new sentencing hearing. *Malvo*, 481 Md. at 94. The circuit court denied the motion to correct, and Appellant sought appellate review. *Id.* at 94–95. In August of 2022, the Supreme Court of Maryland issued a decision holding that "a sentencing compliant with the Eighth Amendment" had not yet occurred in Appellant's case and remanded the matter for Appellant to be resentenced. *Id.* at 98, 101–02.

Upon remand, the State attempted to procure Appellant from Virginia; however, the State was ultimately unable to procure Appellant's physical presence for the resentencing proceeding. Appellant was unwilling to consent to participating in sentencing through video conference. Based on the delay in bringing him to Maryland for an in-person sentencing hearing, Appellant filed a motion to vacate his guilty plea. The circuit court conducted a hearing which resulted in the denial of Appellant's motion to vacate his guilty plea. The trial court found that the State did not have the power to transport Appellant from Virginia to Maryland, and that sentencing could not occur remotely without Appellant's consent. In light of those immutable positions, the court concluded that a sentencing

hearing could not be scheduled. The court issued a detainer for Appellant to be returned to the Circuit Court for Montgomery County to be sentenced in person when his sentences in Virginia were completed.

Appellant noted the subject appeal, presenting the following issue for our review, which we quote:

> Did the trial court err when it denied [Appellant's] motion to vacate or withdraw his guilty plea and found that he would have to wait until he had served four life sentences in Virginia before being sentenced in Maryland?

Because the order appealed from is not final and the collateral order doctrine does not apply, we shall dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

To provide context for the factual issues underlying the present appeal, we set forth the following summary of factual and procedural history from the 2022 opinion of the Supreme Court of Maryland:

> Over the course of three weeks in October 2002, [Appellant], then age 17, and John Allen Muhammad, then age 41, committed a series of murders in the greater Washington, D.C. area, primarily by shooting a high-powered rifle while concealed in the trunk of a modified automobile so as to terrorize the area of the country in which Mr. Muhammad's ex-wife lived. These crimes received considerable national media attention and became known as the "DC sniper attacks."
>
> [Appellant] and Mr. Muhammad were charged with multiple counts of murder and other crimes in Virginia and Maryland. In Virginia, [Appellant] was convicted on four counts of first-degree murder. In Maryland, [Appellant] voluntarily testified against Mr. Muhammad and, in

2

2006, pled guilty to six counts of first-degree murder in the Circuit Court for Montgomery County.

*Malvo*, 481 Md. at 77–78.[1]

## Plea Hearing and Sentencing

In advance of the plea hearing, the State and Appellant sent a memorandum to the assignment office, indicating that they had "agreed to a disposition of the . . . case by a plea to all counts of th[e] [c]harging document[.]" The memorandum contained a section for comments, which reflected that "[Appellant] will plea to all six counts included in the [i]ndictment; State and Defense are free to allocute. State has provided [Appellant] notice of its intent to seek a sentence of life without the possibility of parole." The plea hearing was held in October of 2006. At the hearing, the State indicated that Appellant had "agreed to plea to all six counts of first-degree murder" in the indictment, and that the parties had agreed to defer sentencing until November of 2006. The State then articulated the following:

> [T]he State is making no sentencing concessions. The State has already given [Appellant] notice that . . . the State intends to seek a sentence of life without the possibility of parole. And aside from that . . . and that isn't even an agreement, there are no other concessions. There are no concessions whatsoever[.]

The defense indicated that they were attempting to reach a global resolution of Appellant's legal problems and would provide an update to the court prior to sentencing.

---

[1] A more complete recitation of the underlying history and homicides may be found in the Supreme Court of Maryland's opinion. *Malvo*, 481 Md. at 86–89.

3

The defense noted that the global resolution referred to was "certainly not an agreement with the State."

In explaining the terms of the plea to Appellant, defense counsel stated the following:

> Other than the plea agreement that has been recited, which is that you plead guilty to six counts of first-degree murder, and the State reserves the right to seek six sentences of life imprisonment without the possibility of parole, have any other promises, threats[,] or inducements been made to get you to plead guilty in this case?

Appellant responded, "[n]one whatsoever."

The court found that Appellant was offering his guilty plea freely, intelligently, and voluntarily. The State then proffered the factual basis supporting the guilty plea. Appellant agreed to the statement of facts proffered by the State as to the six first-degree murders to which he had pled guilty in Maryland. The court found there was a factual basis to support the plea and found Appellant guilty of six counts of first-degree murder as charged.

Appellant was sentenced in 2006. *Malvo*, 481 Md. at 78. The sentencing court acknowledged Appellant's growth, cooperation with law enforcement, as well as his remorse and transformation since his arrest. *Id.* The court sentenced Appellant "to the maximum sentence of six terms of life in prison without the possibility of parole, to run consecutively to each other and to the four sentences of life without parole that he was serving in Virginia." *Id.*

### Motion to Correct Illegal Sentence and Post-Conviction Appeal

Appellant filed a motion to correct an illegal sentence in 2017, arguing that a sentence of life incarceration without the possibility of parole was not permitted for a

juvenile offender found guilty of murder unless the sentencing judge first determined that the offender was irredeemable. *Id.* at 94. Following a robust analysis of the development of *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and *Jones v. Mississippi*, 593 U.S. 98 (2021),[2] the Supreme Court of Maryland noted the following concerning Appellant's sentences:

> As outlined above, *Miller* and *Montgomery* established that the Eighth Amendment requires a hearing where "youth and its attendant characteristics" are considered as sentencing factors so that life without parole is not imposed in cases where a juvenile offender's crime resulted from transient immaturity. In *Jones*, where the sentencing occurred after *Miller* and *Montgomery*, the Court clarified that a discretionary sentencing system is "both constitutionally necessary and constitutionally sufficient" to satisfy the procedural component established by *Miller* and *Montgomery*. No explicit finding of the offender's incorrigibility is a prerequisite to a sentence of life without parole; instead, a defense presentation of argument about the offender's youth and the exercise of the court's discretion to impose a no-parole sentence can serve as an implicit finding of incorrigibility.

> While sentencing [Appellant] against a constitutional background that lacked all of *Graham*, *Miller*, *Montgomery*, and *Jones*, the judge appeared to recognize that his crimes - heinous as they were - were committed by a vulnerable and impressionable youth deeply under the sway of an adult he viewed as a father figure. Also, the judge stated that [Appellant] had changed in the four years since he had committed those crimes. At the same time, the judge told [Appellant] that "[w]hat you are, however, is a convicted murderer." These statements lead to two equally reasonable, though conflicting, inferences as to the sentencing judge's view on whether [Appellant] was "the rare juvenile offender whose crime reflects irreparable corruption" and who thus was constitutionally eligible under the subsequent Supreme Court cases for a sentence of life without parole. *Miller*, 567 U.S. at 479-80, 132 S.Ct. 2455. A third, and perhaps more likely, inference is that the sentencing judge, who in 2006 had no reason to predict the Supreme Court's development of that standard, did not consider it.

---

[2] *See Malvo*, 481 Md. at 79–85.

*Malvo*, 481 Md. at 95–96.

The Supreme Court of Maryland then vacated the sentences, holding that

> In our view, the legality of a sentence under the Eighth Amendment is not a topic for this Court's speculation. Here, it is unclear at best whether [Appellant's] sentencing proceeding complied with the Eighth Amendment constraint announced in *Miller*, made retroactive in *Montgomery*, and affirmed in *Jones*. Accordingly, we shall remand to the Circuit Court for resentencing.

*Id.* at 98 (footnote omitted).

### **Status Hearings on Remand**

*January 2023*

In January of 2023, following the issuance of the mandate and remand, the Circuit Court for Montgomery County held a scheduling conference to set a hearing for Appellant's resentencing. The State objected to scheduling the resentencing hearing, contending the Interstate Agreement on Detainers could not be used to transport Appellant and there was no other apparent mechanism to effectuate Appellant's presence from his detention in Virginia to a hearing in Maryland. The State also asserted it was premature to resentence Appellant, as he was serving several life sentences in Virginia.[3] Appellant's counsel argued that if the State was unable to transport Appellant for resentencing until his Virginia sentences were completed, Appellant would be prejudiced because he would be unable to argue for a sentence running concurrent to the Virginia sentences, and any delay would therefore be a violation of due process. The court indicated that while it was

---

[3] The State additionally noted its reticence to resentencing Appellant in light of the trauma to the community and to the families of the victims. The State referred to the sentencing hearing being scheduled as "reconsideration" rather than as resentencing.

sympathetic to the trauma faced by the victims' families and the community, the mandate from the Supreme Court of Maryland required that a resentencing hearing be set. The court scheduled a week-long sentencing hearing to begin on October 23, 2023. The court also scheduled a status hearing to be held in August of 2023.

The court inquired whether Appellant was requesting to be present in person at his sentencing, to which the answer was affirmative. Appellant's counsel asserted that even if the State was unable to use the IAD[4] to transport Appellant, there were other means of ensuring his presence, including the mechanism the State uses to bring out-of-state witnesses to testify. The State indicated that bringing Appellant as a witness to testify was different from bringing Appellant for sentencing. The State suggested the circuit court issue a writ. Appellant contended that if Appellant "is not brought and ultimately does not have

---

[4] The Interstate Agreement on Detainers, or the IAD, "is a congressionally sanctioned compact among forty-eight states, the Federal Government, Puerto Rico, the U.S. Virgin Islands, and the District of Columbia." *State v. Meadows*, 261 Md. App. 464, 475 (2024) (citation omitted). It "gives prisoners incarcerated in one state the right to request the prompt disposition of charges filed against them in another state." *Id.* at 470. Articles III and IV of the IAD govern initiation of a prisoner's transfer between states. *See Aleman v. State*, 469 Md. 397, 408–09 (2020). However, transfer is not available at all times; it is only available if an "*untried* indictment, information, or complaint" is pending. *See* Md. Code, (1999, 2025 Repl. Vol.), § 8-405 and § 8-406 of the Correctional Services Article (emphasis added). This Court stated the following in *Painter v. State*:

> [T]he term "trial" in Article III, as well as in Article IV, *does not encompass sentencing*. If it did, then the anti-shuffling provision of Article III, as well as of Article IV, would have addressed, we can assume, unsentenced convictions, as it does "untried indictments, informations, or complaints." It does not, and thus we conclude that a "trial", for the purposes of the IAD, *refers to the resolution of charges and not necessarily to the imposition of sentence*.

157 Md. App. 1, 20 (2004) (emphasis added).

7

a sentencing, that is going to become a problem for the State as far as due process and other considerations that will grow as the sentencing continues to be delayed." The court indicated that it would issue a writ and requested that the State inform the court and Appellant's counsel if Virginia indicated it would not honor the writ.

*August 2023*

The court conducted a status hearing in August of 2023. At the hearing, the court indicated that it had prepared a writ to issue to secure the presence of Appellant for sentencing. The State indicated that it did not believe the writ would be honored because a Maryland court would not have jurisdiction to order authorities in Virginia to produce Appellant, and, as the IAD did not apply, there was no other legal mechanism by which the State could transport Appellant. Appellant requested that the court issue a writ with the aspiration that it be honored; Appellant's counsel noted that the State often procures incarcerated individuals from other jurisdictions when they are witnesses, and there was no reason the State could not use an identical mechanism in the present case. Appellant further noted that there was some case law suggesting that the IAD could apply to sentencing. Appellant requested that the resentencing hearing set for October remain scheduled to secure Appellant's presence in Maryland, with the understanding that sentencing would not occur on that date. Appellant noted a preference to have Appellant transported to, and remain in, Maryland for six months and then have sentencing. At the court's prompting, the State indicated it would investigate the process for acquiring Appellant's presence, which the State anticipated would require approval from the governor and the head of corrections in Virginia.

8

The court then entered an order directing the clerk of the court to issue a writ to the warden of the prison in Virginia at which Appellant was incarcerated to enable the Montgomery County Sheriff's Office to attempt to take custody of Appellant.

*October 2023*

In October of 2023, the date that was to have been the first day of the resentencing hearing, the court conducted a status hearing. The court noted that it had been in communication with the sheriff's department, which informed the court that there was no action to be taken by the sheriff's department as the prison at which Appellant was being held would not release Appellant based on the writ. The court explained that the warden of the prison in Virginia at which Appellant was incarcerated would have to approve the writ and had not done so. The court indicated that based on the information provided by the prison, the only mechanism that would possibly effectuate transport of Appellant to Maryland was if the governor of Virginia approved the transport.

The State provided an update regarding its efforts and indicated the understanding that the Secretary of State in Maryland had an extradition service which could create a petitioning memorandum to its counterpart in Virginia setting out details regarding such matters as transportation, security, housing, and length of stay. According to the State,

> [The Maryland governor], upon the advice of their extradition people, will decide whether to sign as the requesting governor. It will then be sent to the Virginia governor and they have, it is my understanding, they have a companion office that's very similar to what we have in Maryland; and they will then review the request and make a determination as to whether or not they will honor Maryland's request. It is, and so, if, if their governor, looking at our governor's request, agrees with the terms and condition, they can then order him back to us.

9

> [T]he things that I'm outlining are among the things that would have to be addressed in the petition before it is sent to Virginia. Then if you have the agreement of the requesting state, Maryland, meeting all the conditions that our Governor wants, you would then send it to their governor's office; he would look at the conditions. If he's satisfied, he signs off on it; and then there would be, I guess, a writ according to this agreement that then would be issued to have actually had some impact that would authorize [the prison in which Appellant is being incarcerated] to release him to come back here.

The State further noted that in its discussions with the Secretary of State of Maryland, having Appellant present in Maryland for more than a few days would likely not be feasible.

Appellant repeated his arguments involving the application of the IAD, and then noted that the defense would cooperate and do what was necessary to ensure a request from Maryland would be acceptable to Virginia. At the court's request, the State agreed to seek the template from the Office of the Secretary of State of Maryland so the State, the defense, and the court could do what was necessary for the paperwork to be completed.

*February 2024*

In February of 2024, the parties, along with personnel from the Department of Corrections and the Montgomery County Sheriff's Office, appeared before the court to coordinate dates for a sentencing hearing. The proceeding was then set to take place over the course of a week in December of 2024. The court noted that "the reason why it's important to finalize the dates is so that the draft executive agreement between the Governors of Maryland and Virginia can be sent to the Maryland Secretary of State's Office. An agreement between the two is the only way to get [Appellant] here." The court

requested the State to provide information regarding a contact at the Maryland Secretary of State's Office to whom the court could provide a draft proposal of an executive agreement.

*March 2024*

A status hearing was conducted in March of 2024, during which the court stated that it had sent the draft executive agreement to the Office of the Secretary of State, and that the court had received a response from the extradition coordinator indicating that the draft "had been forwarded to the Governor's Counsel's office who might reach out with questions at a later date." The court noted that it had not received any further communication. The State also provided an update, indicating that the Secretary of State's office had contacted the State with a request for certain documents and docket entries, which the State had provided the same day. The court observed that there was no further action to be taken until there was a response from the governor's office or from the Secretary of State.

*June 2024*

In June of 2024, the court conducted another status hearing. The court noted that it had reached out to the extradition coordinator at the Office of the Secretary of State for an update. Personnel at the Office of the Secretary of State had written to the State, indicating that the office would like to know Virginia's position on the proposed executive agreement, and inquiring whether the State would like to schedule a time to discuss.[5] Following an

---

[5] The court noted that the Secretary of State's letter was framed as though the extradition agreement was at the recommendation of the judge. The court clarified that "it wasn't this

11

interchange between the parties and the court, the court authorized the State to contact the Office of the Secretary of State in Virginia to determine the position of that office, per the letter provided by the Maryland Office of the Secretary of State.

*September 2024*

In September of 2024, another status hearing was held. The State indicated that it had been in communication with an individual at the head of the extradition unit at the Office of the Secretary of the Commonwealth in Virginia. The State had also communicated with the head of extradition at the Maryland Office of the Secretary of State, who relayed to the State that Virginia was "not interested in entering into an executive agreement" with Maryland as to Appellant. Appellant indicated that while he recognized the State's "significant efforts" in coordinating the communications, Appellant did not believe the State had adequately advocated the mandatory nature of a new sentencing hearing. The State clarified that its communication with Virginia included leaving a voicemail, sending a letter by email, and sending a follow-up message by email when no response was received. The State further indicated that Virginia communicated directly with the Maryland Office of the Secretary of State, as the State did not have authority to represent the governor. Therefore, the State asserted that it was not acting in the role of an advocate for the governor, and it was the State's position that it would not have been appropriate to do so.

---

[c]ourt's recommendation that the governors execute the agreement. As I indicated in my email to the Secretary of State's office, we had been informed by the warden [in] Virginia that the only way that [Appellant] could be brought to Maryland was if the governors of both states agreed."

## Motion to Vacate Plea

Simultaneously to the October 2023 hearing, Appellant filed a motion to vacate plea agreement. In his motion, Appellant asserted that a plea agreement existed, despite the absence of any concessions by the State, as demonstrated by a memorandum noting that both the State and defense were free to allocute. Appellant claimed that the State had the power to bring him to Maryland under the IAD, and that if the State remained unsuccessful in arranging to transport Appellant for resentencing, "a material term of his plea agreement" will have been breached because Appellant would "be unable to allocute for a lesser sentence." Appellant argued that the remedy for a breach of a plea agreement is a choice of specific performance or withdrawal of the plea. Appellant contended that his remote appearance could not substitute for his physical presence at resentencing, and that "the lack of a sentencing hearing . . . will warrant dismissal of this case for having violated [Appellant's] right to a speedy trial." Accordingly, Appellant argued his guilty plea should be vacated "unless the State is successful in having him transported from Virginia to Maryland in a reasonable amount of time."

The State responded, arguing that the terms stated during the plea hearing are what controlled any agreement. The State indicated that at the plea hearing, Appellant pled guilty to six counts of first-degree murder and the State filed notice of its intent to seek life without the possibility of parole, leaving the parties each free to allocute. The State noted that the plea memorandum cited by Appellant was collateral evidence with no bearing on the actual plea hearing, and that the State made no promises or concessions to Appellant; nor did it promise to assure that he would be brought to Maryland in the event of future

resentencing. The State further noted that the majority of caselaw regarding the IAD, as well as the only Maryland precedent, indicated that the IAD does not apply to sentencing, and is not a lawful mechanism through which the State can seek to obtain Appellant's presence for resentencing.[6]

Appellant responded, noting that he "only received one benefit from pleading guilty – the ability to allocute for a lesser sentence at a deferred sentencing date[,]" and because he could not attain that benefit without an in-person resentencing hearing, his plea should be vacated. He also asserted that "due process . . . forbids prejudicial delays of sentencing proceedings."

Prior to the hearing scheduled on the motion to vacate, the representative of one of the murder victims filed an opposition to Appellant's motion to vacate, arguing that Appellant's right to due process could be satisfied by remote video appearance. The victim's representative also contended that although Appellant pled guilty, he did so in the absence of a plea agreement.

**<u>Hearing on Motion to Vacate</u>**

In September of 2024, a hearing was conducted on Appellant's motion to vacate the plea.[7] Appellant asserted that if he could be brought to Maryland under the IAD, then the

---

[6] The State also argued that Appellant's motion was procedurally improper because it did not cite a procedural basis under which Appellant could vacate the plea. The State further claimed that Appellant could not file a motion to withdraw a plea agreement because the Maryland Rules do not allow such a motion unless it is filed within ten days of the imposition of a sentence, which the State asserted had occurred in 2006.

[7] At the outset of the hearing, there was interchange about a letter Appellant personally sent to the court regarding his desire to reach an agreed-upon sentence with the State. Appellant

14

remedy of having his plea withdrawn would not be ripe. He framed the decision before the court as a two-fold approach that first required a determination of whether the State was required to do anything further in its effort to bring Appellant to Maryland; and second, if the court determined the State had done everything at its disposal, whether Appellant was entitled to specific performance of his plea, and therefore, to withdraw his plea. When the court inquired how it could order specific performance of a term not in a plea agreement, Appellant responded that the court could order the State to undertake more efforts or run the risk of having the plea vacated, asserting the State never intended to bring Appellant back to Maryland. Appellant added that even if sufficient efforts had been undertaken by the State, the only benefit Appellant got under the plea was the right to allocute, and that right should be enforced. Appellant argued that a remote sentencing hearing would not be constitutionally or statutorily acceptable without the consent of Appellant.

The State responded[8] by outlining the efforts it had taken to achieve Appellant's transfer for resentencing.[9] The State indicated that there were no further steps for the State

---

wrote that he wanted to avoid retraumatizing the victims' families and the community by engaging in a protracted process and expressed his desire to be sentenced to a term of life incarceration running concurrently to his sentences in Virginia. After the State noted that it would not consider an agreed-upon sentence wherein Appellant would be sentenced to a term of incarceration concurrent with his Virginia sentences, the matter proceeded to argument on the motion to withdraw the guilty plea.

[8] Prior to presenting argument, the State offered into evidence exhibits, including the State's correspondence with the Secretary of State of Maryland, its correspondence with the Secretary to the Commonwealth's Office in Virginia, and a transcript of Appellant's plea hearing.

to undertake and no legal mechanism to transport Appellant to Maryland. The State indicated that if the court disagreed, the State would do what it could to explore other lawful means of obtaining custody; however, it posited that through no fault of the State of Maryland, Appellant's physical custody could not be achieved. The State argued that to the extent the court considered Appellant's motion to withdraw his plea, the Supreme Court of Maryland ruled in its earlier opinion in the matter that the guilty plea was not induced by any concessions from the State, and there was no plea deal.[10] The State asserted that the memorandum setting the plea hearing was extrinsic evidence that could not be considered because consideration of the existence and terms of a plea agreement are limited to what is presented in the plea hearing. The State further noted that even if the court considered the memorandum to demonstrate the existence of a plea agreement, the right to allocution includes a defendant's right to present information to the court yet does not require that defendant's physical presence. The State concluded that there was no plea agreement, and even if the court determined there was, there was no breach by the State, and therefore, Appellant should not be permitted to withdraw his guilty plea.

The court heard argument from counsel for a representative of one of the victims. Counsel argued that there was no plea agreement in this case because nothing had been

---

[9] The State further noted that it had reached out to Virginia seeking a letter stating Virginia's position and the reasons Virginia would not transfer Appellant. However, Virginia had declined to send such a letter at the time of the hearing.

[10] The State further argued that the motion to withdraw was procedurally not allowed.

given up and no benefits had been gained. Counsel further argued that Appellant's in-person presence was not required.

Appellant responded, asserting that an agreement existed which included the State "reserv[ing] the right to ask for life without parole. Which inherently includes that [Appellant] reserves the right to ask for something else. There's no other way to interpret that." Appellant acknowledged that there was no plea deal as there were no concessions; however, Appellant claimed that there was still an agreement that he could allocute at sentencing. Appellant then asserted that if the agreement became impossible to enforce—as he claimed had become the case here—the remedy was to allow Appellant to withdraw the guilty plea. He then claimed the State did not do enough to bring Appellant back to Maryland, asserting that the State should have made clear to the Governor of Maryland that there was a "significant consequence" if Appellant was not successfully brought to the state in person.

The court then ruled on the motion. After outlining the progress of the case since Appellant's filing of the motion, the court indicated that "[a]t the last status hearing, it was clear that Virginia would not permit [Appellant] to be transported from Virginia to Maryland and therefore, the [c]ourt scheduled this hearing." The court recounted the efforts conducted by the State to coordinate communication between the Offices of the Secretary of State in Maryland and in Virginia. The court found that "there [was] no basis to vacate the plea based on the State's lack of success in having [Appellant] transported from Virginia to Maryland" because it was not within the State's power to effectuate that transportation. The court then stated the following:

While I appreciate the State's offer today that it will do anything the [c]ourt instructed to try to get [Appellant] to Maryland, there is nothing that the [c]ourt or the State can do. The [c]ourt does not find that the State somehow breached its plea agreement, if there was an agreement, in this matter, to warrant the plea being vacated.

The plea document simply provided that the defendant will plea[d] to all six counts included in the indictment. State and defense are free to allocute. State has provided defendant notice of its intent to seek a sentence of life without the possibility of parole. That is what occurred in this case. The fact that the Maryland Supreme Court has held that [Appellant] must be resentenced does not negate the fact that the State did not agree to anything in the plea memo other than [that] both sides are free to allocute.

The question thus becomes whether the fact that [Appellant] cannot be transported to Maryland for his sentence negates the plea. The [c]ourt finds that it does not. The motion to vacate is denied. The [c]ourt has been ordered to resentence [Appellant]. There are only two options. Have a . . . sentencing hearing in which [Appellant] appears remotely or wait until he has finished his sentence in Virginia.

[Defense counsel] is absolutely correct that Maryland Rule 21-301 requires that [Appellant] must consent to appear at his sentencing remotely. I do not agree with the State or the Victim's Representative attorney that the [c]ourt can order that the sentencing be held remotely if [Appellant] does not consent. [Defense counsel] has given [Appellant's] position that he wants to be present in person and will not consent. Therefore, unless Virginia somehow changes its mind and the Maryland governor also agrees, the [c]ourt cannot hold the sentencing hearing that was scheduled for December 2nd for five days. Therefore, [Appellant] cannot be sentenced until he finishes his Virginia sentence.

Accordingly, the [c]ourt issues a bench warrant against [Appellant] that will serve as a detainer returnable to the [c]ircuit [c]ourt judge only for when [Appellant] is released from Virginia. That's the only thing the [c]ourt can do at this point.

Appellant requested that the court not issue a bench warrant, as a detainer could have a negative impact on Appellant's conditions while incarcerated. Appellant suggested that if the State learned Appellant was being paroled in the future, it could request a detainer

18

at that time. The State responded that the court's decision was the mechanism the State would ordinarily undertake for other similarly situated individuals. The court announced that its decision would stand, and it would issue a bench warrant that would serve as a detainer.

The court issued a bench warrant, to be "lodged as a detainer with [the] Commonwealth of Virginia." (Capitalization omitted). Appellant noted this appeal within thirty days of the circuit court's decision.

## DISCUSSION

**I.    APPLICATION FOR LEAVE TO APPEAL**

### A. Party Contentions

The State contends that because Appellant entered a guilty plea, a direct appeal is not permitted, and review of a final judgment must be sought by application for leave to appeal. The State acknowledges that this Court can construe a notice of appeal and brief together as an application for leave to appeal, and requests that we do so; however, the State requests that this Court transfer the matter to the application docket. Appellant did not respond to this argument in his briefing.

### B. Analysis

"In Maryland, appellate jurisdiction, except as constitutionally created, is statutorily granted." *Stephens v. State*, 420 Md. 495, 501 (2011) (quoting *Schuele v. Case Handyman, LLC*, 412 Md. 555, 565 (2010)); *see also Seward v. State*, 446 Md. 171, 176 (2016). Criminal defendants do not have a constitutional right to appeal in Maryland, and they may only seek appellate review when that right is granted by the Legislature. *Douglas v. State*,

19

423 Md. 156, 170 (2011) (citing *Cubbage v. State*, 304 Md. 237, 241 (1985) and *Fuller v. State*, 397 Md. 372, 382 (2007)). Section 12-301 of the Courts and Judicial Proceedings Article to the Maryland Code (1974, 2020 Repl. Vol.) ("CJP") provides that "[e]xcept as provided in [section] 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court."

CJP section 12-302(e) provides that an appeal from a final judgment following a plea of guilty in circuit court is not allowed and must be sought by an application for leave to appeal.[11] Maryland Rule 8-204 governs applications for leave to appeal. Appellate courts in Maryland have sometimes treated notices of appeal as applications for leave to appeal. *See Grandison v. State*, 425 Md. 34, 52 (2012) (citing *Miller v. State*, 185 Md. App. 293, 295 (2009) and *Bagley v. Warden*, 1 Md. App. 154, 158 (1967)). Therefore, the decision as to whether an appellate court will require strict compliance with the terms of Maryland Rule 8-204 is discretionary. *Id.*

Appellant entered a guilty plea, and, as he seeks review of the denial of his motion to vacate the guilty plea, application for leave to appeal was required. *See* CJP § 12-302(e). Here, we will exercise our discretion and treat Appellant's notice of appeal and briefs in this matter as an application for leave to appeal and elect to consider the arguments raised, "notwithstanding this procedural deficiency." *See Grandison*, 425 Md. at 52 (citations omitted). We decline to transfer the matter to the application docket as per the request of

---

[11] This requirement does not apply to appeals from final judgments following conditional guilty pleas. CJP § 12-302(e).

the State and, in granting the application for leave to appeal, we next consider the arguments.

## II.    THE COLLATERAL ORDER DOCTRINE

### A. Party Contentions

The State asserts that if the Court were to treat Appellant's brief as an application for leave to appeal and grant the application, the Court would still be unable to consider the appeal because the appeal is from a non-final order, and no exceptions to the finality requirement apply. Appellant responds that his appeal may be reviewed under the collateral order doctrine.

### B. Analysis

In general, an appeal may only be taken from a final judgment. *Stephens*, 420 Md. at 501–02 (citation omitted). "In a criminal case, 'no final judgment exists until after conviction and sentence has been determined, or, in other words, when only the execution of the judgment remains.'" *Id.* at 502 (quoting *Harris v. State*, 420 Md. 300, 312 (2011)).

As noted above, the State contends that the rulings which are raised in this appeal are not final. Appellant does not disagree with that assessment and does not contend that a statutory right of appeal exists that would allow review of the interlocutory ruling. Instead, Appellant claims the circuit court's determination falls within the purview of the collateral order doctrine.

### i.    *The collateral order doctrine*

The collateral order doctrine is a common law exception to the final judgment requirement. *In re M.P.*, 487 Md. 53, 68 (2024) (citations omitted). The doctrine allows

21

interlocutory review of rulings in specific and limited circumstances to promote judicial efficiency and economy. *Id.* (citations omitted). The collateral order doctrine allows for immediate appeal of an order if it "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Id.* (quoting *Stephens*, 420 Md. at 502). These four requirements are "conjunctive[,]" and each must be satisfied for the order to qualify as collateral. *Stephens*, 420 Md. at 502–03 (citing *In re Franklin P.*, 366 Md. 306, 327 (2001)). If even one of the four requirements is not met, the remainder of the factors need not be considered. *Id.* at 503 (citing *Bunting v. State*, 312 Md. 472, 477 (1988)). "We apply these elements 'very strictly' in keeping with the narrow nature of the exception, which should apply 'only in extraordinary circumstances.'" *In re M.P.*, 487 Md. at 68 (quoting *Stephens*, 420 Md. at 503).

> ii.      *An order denying a motion to vacate a guilty plea is distinct from orders determining the existence and enforceability of plea agreements.*

Appellant contends that the denial of a motion to vacate a plea due to a plea agreement that cannot be fulfilled is appealable. He contends that such a denial occurred in the present case, and that in any event, if an order centers around the existence and enforceability of a plea agreement, that order will necessarily fall within the scope of the collateral order doctrine. In support of this argument, Appellant cites *Rios v. State*, 186 Md. App. 354 (2009), *Courtney v. Harford County*, 98 Md. App. 649 (1994), *Falero v. State*,

212 Md. App. 572 (2013), and *Y.Y. v. State*, 205 Md. App. 724 (2012), cases which he contends are similar to his. We examine each case.

*Rios v. State*

*Rios* involved the denial of a motion to enforce an alleged plea agreement. 186 Md. App. at 357. In that matter, the State and the defendant's counsel "had entered into extensive plea negotiations" which culminated in a recommendation propounded by defense counsel which the State indicated was acceptable and which the defendant accepted upon being informed. *Id.* at 358–59. The State later informed defense counsel that no plea offer would be made. *Id.* at 359. The defendant filed a motion to enforce the plea agreement, which the court denied, having made findings that a plea agreement had not been formed. *Id.* at 359–62. The defendant noted an interlocutory appeal. *Id.* at 362.

This Court considered whether the order was appealable. *Id.* at 363. We held that the order was appealable under the collateral order doctrine, focusing primarily on the final two elements (i.e., whether the order is separate from the merits and whether it would be entirely unreviewable on appeal). *Id.* at 365–66. We held that the third element can be satisfied by an order denying a motion to enforce because "the existence of an enforceable plea agreement is an issue independent of [an] appellant's guilt or innocence." *Id.* at 365. We explained that an order denying a motion to enforce can be effectively unreviewable if a plea agreement would require a defendant to proceed to trial and verdict when an important purpose of making a plea agreement is to avoid the expense, inconvenience, and uncertainty of a trial. *Id.* (citations omitted). In reaching this conclusion, we noted the caution from the Supreme Court of Maryland indicating the idea that an issue is not

23

effectively reviewable after the termination of trial—because it involves a "right" to avoid the trial itself—should be limited to double jeopardy claims and "very few other extraordinary situations." *Id.* at 366 (citing *Tamara A. v. Montgomery Cnty. Dep't of Health and Human Servs.*, 407 Md. 180, 191 (2009)). However, we held that the enforceability of a plea agreement constituted such an extraordinary circumstance in light of strong public policy that favors plea negotiation. *Id.*

### *Courtney v. Harford County*

*Courtney* involved an agreement between a married couple and the State which required the husband's cooperation in controlled drug buys and a plea of guilty by the husband in exchange for limitation in the charges brought and a recommended sentence. 98 Md. App. at 651–53. When disagreements arose regarding the defendants' obligations under the agreement, the husband acquiesced to the demands of the police rather than seeking an interpretation from the judge, as was permitted under the agreement. *Id.* at 653–54. Subsequently, the defendants tipped off their contacts who were to be the targets of the drug buys. *Id.* at 654. The State declared the plea agreement breached. *Id.* at 655. The court conducted a hearing where it held that the husband had breached the agreement, and the agreement was therefore null and void. *Id.* at 655–56.

The defendants appealed the order, and this Court considered whether it was appealable under the collateral order doctrine. *Id.* at 656–57. We determined that the only element in doubt was the fourth element, concerning whether the agreement would be "effectively unreviewable following the entry of a final judgment." *Id.* at 658. We noted the following:

24

> In one sense, it *would* be reviewable. If [either of the defendants] is convicted and appeals, he or she could raise the issue of whether the State was bound by the plea agreement, and if we were to conclude in that appeal that the State *was* so bound, we would be obliged to reverse any convictions other than the one bargained for in the plea agreement.

*Id.* (emphasis in original) (citation omitted). We observed that, similar to civil settings, if an agreement is set aside and the matter proceeds to a trial on the merits, the contractual benefit that was sought—i.e., avoiding the time, expense, and uncertainty of trial—will be irretrievably lost. *Id.* at 659–60. We held that those consequences were "multiplied" in *Courtney*, where the validity of the plea agreement was likely to be the subject of multiple appeals in various contexts. *Id.* at 659. We therefore determined that the collateral order doctrine applied. *Id.*

### Falero v. State

In *Falero*, the defendant entered a guilty plea that was accepted by the trial court; however, he did not participate in the pre-sentencing investigation and did not attend the sentencing hearing. 212 Md. App. at 577–78. It was later determined that the defendant had left the country. *Id.* at 578–79. After the defendant was detained on a bench warrant, he filed a motion to enforce the plea agreement, which agreement the State requested that the court vacate. *Id.* at 578. The court found that the defendant had entered into the plea agreement with no intention of cooperating with the pre-sentence investigation or attending the sentencing. *Id.* at 579. The court therefore vacated the plea and stayed the appeal. *Id.* On appeal this Court determined in a footnote that based on *Rios*, the collateral order doctrine applies to a ruling on a motion to enforce a plea agreement. *Id.* at 579 n.2 (citing *Rios*, 186 Md. App. at 364–66).

25

*Y.Y. v. State*

In *Y.Y.*, the defendant entered a guilty plea that was accepted by the trial court, in which he agreed to plead guilty to possession of cocaine with intent to distribute. 205 Md. App. at 730–31. The defendant agreed to cooperate as a confidential informant, providing information and assistance leading to three arrests. *Id.* at 731–32. If the defendant cooperated as described, he would be sentenced to a term of eighteen months, all but one day of which would be suspended. *Id.* at 730. If he did not meet the obligations, he would be sentenced within the guidelines of between five and ten years. *Id.* at 730–31.

According to the reviewing court, the transcript of the guilty plea hearing contained no reference to the terms of a plea agreement; however, the terms of the agreement were apparently "explained to the presiding judge off the record." *Id.* at 731. Following the trial court's acceptance of the guilty plea, the State and the defendant signed a letter outlining the specific terms of the agreement. *Id.* at 731–32.

After seven months, the defendant was given credit for providing information towards two arrests; however, the detectives no longer wished to work with the defendant due to unproductive information and difficulty remaining in communication. *Id.* at 734–35. The defendant filed a motion to enforce the plea agreement, seeking to obtain the benefit of the agreement. *Id.* at 732, 735–36. The circuit court denied the motion to enforce, finding that it could not order specific performance because the defendant had not completed his obligations under the contract. *Id.* at 735–36. Although the court indicated that it would address the issue of sentencing, the defendant noted an interlocutory appeal. *Id.* at 736.

On appeal, this Court did not review the appealability of the interlocutory order other than to state the following:

> We first note that the circuit court's order denying [defendant]'s motion to enforce the plea agreement is appealable under the collateral order doctrine. *See Rios v. State,* 186 Md. App. 354, 364–66 (2009) ("The enforceability of alleged plea agreements is a proper basis for interlocutory appeals because of the strong public policy that favors the plea negotiation process.").

*Id.* at 736–37 (internal parallel citation omitted).

*Application to Present Case*

With these cases in mind, we turn to the matter at hand. As an initial matter, we note that Appellant argued to the circuit court, as he does here, that his plea was the result of an agreement in which he retained the right to allocute for a reduced sentence. In its 2022 opinion, the Supreme Court of Maryland stated the following:

> [O]n October 10, 2006, [Appellant] pled guilty to all six charges of first-degree murder pending against him in the Circuit Court for Montgomery County. The prosecutor informed the court that the guilty pleas were not induced by any concessions by the State – in other words, *there was no plea deal*.

*Malvo*, 481 Md. at 89 (emphasis added). Noting this reference by the Supreme Court, in addition to the absence of any indicia of an agreement at the plea hearing, we see no basis by which Appellant can successfully argue that a plea agreement had been reached, much less that the alleged agreement now warranted the granting of a motion to withdraw his

guilty plea. *See id.*[12, 13] Thus, unlike *Rios*, *Courtney*, *Falero*, and *Y.Y.*, in this case, no plea

agreement existed to be enforced.

---

[12] "A plea agreement is, of course, a contract between a criminal defendant and the State in which each seeks to gain a benefit and, in return for such benefit, each agrees to pay a price." *Hughes v. State*, 243 Md. App. 187, 199 (2019) (citation omitted). A plea agreement "is a very special contract, moreover, in that even after the basic quid pro quo is agreed upon by the primary contracting parties, the entire package may be submitted to a criminal court for its approval and its subsequent enforcement." *Id.* Finally, "a defendant has an absolute right to allocution, which includes an absolute right to present mitigating information, prior to sentencing pursuant to Maryland Rule 4-342(e)[.]" *Mainor v. State*, 475 Md. 487, 501–02 (2021) (collecting cases). Appellant's right to allocute was a right he already possessed. *See Mainor*, 475 Md. at 501–02. Thus, what he now alleges constitutes a bargained-for benefit lacks the markers of a contract as enunciated in *Hughes*, 243 Md. App. at 199. In any event, the record from the plea hearing demonstrates that the parties were not entering a plea agreement, as noted by the Supreme Court of Maryland. *See Malvo*, 481 Md. at 89.

[13] At argument in this matter, Appellant suggested that a plea agreement existed because, in his view, the State could have informed Appellant that it would not negotiate with him and if he did not plead to a minimum of one life sentence per count of murder, the State would proceed to trial. In that scenario, Appellant posited that if he informed the court that he wished to plead to the indictment in its entirety, the court would have discretion to reject his guilty plea, arguably even if it were knowingly and voluntarily given. He asserted that the State has a right to force a case to trial. Maryland Rule 4-242(c) prohibits trial judges from accepting a guilty plea if the plea is not knowing and voluntary or if there is not an adequate factual basis to support an adjudication of guilty. It permits trial courts to accept a guilty plea even if the defendant does not admit guilt; and it requires the court to enter a not guilty plea if the court has refused to accept a guilty plea. Md. Rule 4-242(c). The Rule does not grant a trial court discretion to reject a guilty plea if the other requirements of Maryland Rule 4-242(c) are met. Moreover, although a defendant does not have a freestanding right to have a guilty plea accepted when a trial judge does not find the plea was entered into knowingly and voluntarily, *see Lee v. State*, 36 Md. App. 249, 254–56 (1977), we are not aware of a case, nor have any been cited to us, granting a trial judge discretion to reject a guilty plea once the court has been satisfied that the requirements of Maryland Rule 4-242(c) are met when a defendant enters a guilty plea to all counts of the indictment. Nor are we aware of a case or rule, nor have any been cited to us, granting the State a right to force a case to trial in such a scenario.

28

We note several further distinguishing factors between the orders in *Rios*, *Courtney*, *Falero* and *Y.Y.* and the order in the present case. Each cited case involved an order that denied the defendant the right to further participation in a plea agreement. In *Rios*, *Courtney*, and *Falero*, the orders would have resulted in the defendant facing a trial that would have been avoided if the plea agreement stood. In *Y.Y.*, although the order did not involve the avoidance of trial, it did involve a benefit that, once lost, could not be regained. Specifically, under his plea agreement, the defendant in *Y.Y.* had attained a benefit in the form of an agreed-upon sentence of eighteen months, with all but one day suspended. The circuit court determined that the defendant had not satisfied the terms of the agreement, which meant that the defendant would be sentenced to a minimum term of five years. If the defendant had waited to be sentenced and was later successful in appealing the denial of his motion to enforce, he would have spent more than one day incarcerated and would have lost the benefit of the bargain. Thus, for each case, the benefit gained through the plea agreement would have been lost without appellate review. In contrast, here, the benefit Appellant claims to have gained under his alleged agreement—the right to allocute at sentencing—continues to exist and is unchanged as a result of the court's order. Here, the avoidance of trial is not the issue and the right to allocute continues to exist. *See Buzbee v. State*, 199 Md. App. 678, 687 (2011). When Appellant is resentenced, he will have the ability to allocute for a lesser sentence.

Next, both *Rios* and *Courtney* involved defendants whose guilty pleas had not yet been accepted,[14, 15] and in none of the cases did the defendants seek to withdraw an adjudication of guilt. Here, in contrast, Appellant's guilty plea to six counts of murder was accepted nearly twenty years ago.

Finally, each of the cases involved determinations by the circuit courts concerning the enforcement of plea agreements—either finding that the agreement had never existed, as in *Rios*, invalidating the agreement entirely as in *Falero*, or declining to enforce the agreement because its terms had not been satisfied as in *Courtney* and *Y.Y.* Here, by contrast, the court was not tasked with determining the existence of an agreement or whether it contained terms that required enforcement. Rather, the court was asked to consider whether Appellant's guilty plea should be vacated based on the inability to bring Appellant to Maryland for resentencing.[16]

---

[14] Although the defendant in *Falero* had entered a guilty plea, the court vacated his plea due to fraud in conjunction with the court's ruling denying the motion to enforce. 212 Md. App. at 578–79. The defendant in *Falero* sought to have the guilty plea reinstated. *Id.* at 578.

[15] In *Y.Y.*, the defendant's guilty plea had been accepted; however, he was not seeking to withdraw from a guilty plea, but to either reap the benefit of the plea agreement or have his partial performance under the agreement credited to his sentence. *See* 205 Md. App. at 742–43.

[16] We note that the circuit court did not make a finding concerning the existence of an agreement. The court stated that it "d[id] not find that the State somehow breached its plea agreement, *if there was an agreement*, in this matter, to warrant the plea being vacated." (Emphasis added). The court noted that the State complied with the plea memorandum, and the inability to transport Appellant to Maryland was not a basis to vacate the guilty plea.

In the absence of an order granting or denying a motion to enforce a plea agreement, an order determining the existence or validity of a plea agreement, or even a motion to enforce an alleged plea agreement, *Rios*, *Courtney* and *Falero* are inapposite because each involve a bargained-for "the right not to be tried[,]" whether through enforcement of an agreement or its favorable interpretation, and therefore are distinct from the ultimate issue of guilt. *See Buzbee*, 199 Md. App. at 687. *Y.Y.* is likewise inapposite because it involved a contractual term, the favorable interpretation of which would have resulted in the executable portion of a sentence of one day—a benefit that would have been lost if the defendant was sentenced before appeal and is therefore also distinct from the ultimate issue of guilt. *See id.*

### iii. *The court's denial of the motion to vacate the guilty plea was not a collateral order.*

We first examine the court's denial of the motion to vacate the guilty plea. The question of whether an order conclusively determines the disputed question relates to finality within the limited world of the collateral order. *See State v. Houston*, ___ Md. ___, ___, 2026 WL 785704 at *8 (filed Mar. 20, 2026). "An order 'conclusively determines the disputed question' when it would settle the question completely if allowed to stand." *Id.* (citing *In re O.P.*, 470 Md. 225, 251 (2020)). "By contrast, an order does not conclusively determine the disputed question if it is tentative or subject to reconsideration by the court that issues it." *Id.* at *9 (citing *Fuller v. State*, 397 Md. 372, 395 (2007)). Here, the court's decision was a final, conclusive determination of the question of whether Appellant should

31

be allowed to withdraw his guilty plea. Therefore, the first element of the collateral order doctrine is met.

The question of whether an order resolves an important issue will involve some qualitative consideration of the facts of each case; however, in this case, where the grant or denial of the motion would have been the difference in retaining or withdrawing Appellant's guilty plea, the resolution of that issue is undoubtedly important. *See In re O.P.*, 470 Md. at 251; *see also Houston*, ___ Md. at ___, 2026 WL 785704 at *12. Thus, the second element of the collateral order doctrine is met.

The third element of the collateral order doctrine "requires that the contested order(s) be completely separable from and collateral to the merits of the action." *Harris v. State*, 420 Md. 300, 318 (2011) (quotation marks and citation omitted). The merits of a criminal action involve a determination of guilt or innocence; hence, to succeed in having a claim reviewed under the collateral order doctrine, the order to be reviewed must not be entwined with the merits of guilt or innocence. *See In re M.P.*, 487 Md. at 69 (citing *Stephens*, 420 Md. at 505 n.4 (in turn citing *Abney v. United States*, 431 U.S. 651, 661 (1977))) (explaining that review of a motion to dismiss for violation of double jeopardy rights was permitted under the collateral order doctrine because the issue invoked review of whether the defendant could be put to trial twice rather than the ultimate issue of guilt).

An order that determines not to enforce particular terms "in an established plea agreement or miscellaneous bargain meets all four elements of the collateral order doctrine." *Rios*, 186 Md. App. at 364 (citations omitted). This is because "the existence of an enforceable plea agreement is an issue independent of [an] appellant's guilt or

innocence." *Id.* at 365. In contrast, a motion to vacate a guilty plea that has already been accepted is not separate from the merits of the ultimate determination of guilt or innocence. *See In re M.P.*, 487 Md. at 69 (citations omitted).

Because Appellant's request to vacate his guilty plea is not separate from the merits, the third element of the collateral order doctrine is not met.

The collateral order doctrine further requires that the order be effectively unreviewable if appellate review is delayed until after final judgment—a requirement that is met in "very few and extraordinary situations." *Stephens*, 420 Md. at 504–05 (brackets, quotation marks, and citation omitted). The Supreme Court of Maryland has recognized that a defendant may utilize the collateral order doctrine to take an immediate appeal from the denial of a motion to dismiss on the ground of double jeopardy because the guarantee against double jeopardy "would be irretrievably lost if a defendant had to await termination of the criminal trial before appealing an order denying a motion to dismiss" on that ground. *Bunting v. State*, 312 Md. 472, 477–78 (1988). However, the Court has clarified that:

> "the idea that an issue is not effectively reviewable after the termination of the trial because it involves a 'right' to avoid the trial itself, *should be limited to double jeopardy claims and a very few other extraordinary situations*." Otherwise, "there would be a proliferation of appeals under the collateral order doctrine[,]" which "would be flatly inconsistent with the long-established and sound public policy against piecemeal appeals."

*In re M.P.*, 487 Md. at 70 (emphasis added) (internal citations omitted) (quoting *Bunting*, 312 Md. at 482). This element "turns on whether there will be a *serious risk of irreparable loss of the claimed right* if appellate review is deferred until after trial." *Harris v. David S.*

33

*Harris, P.A.*, 310 Md. 310, 318 (1987) (emphasis added) (citing *Parrott v. State*, 301 Md. 411, 425 (1984)).

In the context of a motion to enforce an existing plea agreement, this element can be satisfied because "the existence of a plea agreement is effectively unreviewable after proceeding to trial and verdict, given that an important purpose of making a plea agreement is to avoid the expense, inconvenience, and uncertainty of a trial. The defendant's rights cannot be fully vindicated if he is compelled to wait for a final judgment." *Rios*, 186 Md. at 365. However, when resolving enforcement or interpretation of a plea agreement, a primary concern for purposes of the collateral order doctrine is the contracted right not to be tried, which is distinct from the ultimate issue of guilt. *See Buzbee*, 199 Md. App. at 687.

Conversely, circuit courts' denials of motions to withdraw guilty pleas are routinely reviewed at the conclusion of the case following sentencing. For example, in *Harris v. State*, a defendant pled guilty to first-degree murder and other offenses. 299 Md. 511, 513 (1984). His sentences were vacated in an initial appeal, and upon remand, before resentencing, he filed a motion to withdraw the pleas. *Id.* at 514. The trial court denied that motion and resentenced the defendant to death. *Id.* The defendant sought appellate review of both the resentencing and motion to withdraw the guilty pleas, and the Supreme Court of Maryland undertook that review and vacated the trial court's denial of the request. *Id.* at 514, 519. Appellate courts have frequently conducted review of motions to withdraw guilty pleas after the entry of final judgment. *See, e.g., Blinken v. State*, 291 Md. 297, 306 (1981);

34

*Dawson v. State*, 172 Md. App. 633, 635, 638 (2007); *Harding v. State*, 235 Md. App. 287, 292, 298 (2017); *cf. White v. State*, 250 Md. App. 604, 617, 647–49 (2021).

Here, the order denying Appellant's motion to withdraw from his guilty plea will be reviewable upon entry of the final order once Appellant has been resentenced. Likewise, Appellant will not be at serious risk of irreparable loss of a claimed right if appellate review is delayed to that time. *See Harris*, 310 Md. at 318. Appellant filed a motion to vacate his guilty plea based on the inability to have him brought back to Maryland for resentencing— because he wanted to exercise his right to allocute for leniency at an in-person sentencing hearing. That right will continue to exist until the sentencing hearing occurs, regardless of the denial of his motion to withdraw from his guilty plea.[17]

Because the order denying Appellant's motion to vacate his guilty plea is reviewable at the conclusion of the case, and no irreparable loss will be suffered if appellate review is delayed, the final element of the collateral order doctrine is not met.

---

[17] Appellant contends he will lose the argument for a sentence to run concurrent with the Virginia sentences. We note that although the sentencing judge may not have the technical ability to sentence Appellant to a term concurrent with his Virginia sentences after Appellant has completed them or been paroled—*see Parker v. State*, 193 Md. App. 469, 486 (2010) (citations omitted) ("A court may make a sentence concurrent with or consecutive to any other unsuspended actual term of confinement that then exists.")—that does not limit Appellant's ability to request that the sentencing court exercise its discretion to "apply credit against a sentence for time spent in custody for another charge or crime." Md. Code (2001, 2025 Repl. Vol.), § 6-218(b)(3) of the Criminal Procedure Article. Additionally, even that which Appellant now contends was a plea agreement makes no mention of Appellant arguing for concurrent sentences. This is not to express any view on how the circuit court might exercise such discretion.

*iv.* *The court's determination that sentencing must occur after the conclusion of the Virginia sentences is not a collateral order.*

In addition to the court's denial of the motion to vacate guilty plea, the court further determined that Appellant could not be sentenced until the Virginia sentences are completed. We review whether this order qualifies as a collateral order.

"An order conclusively determines the disputed question when it would settle the question completely if allowed to stand." *Houston*, ___ Md. at ___, 2026 WL 785704 at *8 (quotation marks and citation omitted). "By contrast, an order does not conclusively determine the disputed question if it is tentative or subject to reconsideration by the court that issues it." *Id.* at *9 (citation omitted). Here, the court's decision was a final, conclusive determination of the question of the manner and timing of Appellant's sentencing. Therefore, the first element of the collateral order doctrine is met. The second element is likewise met, as the issue of Appellant's resentencing in a manner consistent with the Eighth Amendment is important. *See Malvo*, 481 Md. at 98. The third element of the collateral order doctrine "requires that the contested order(s) be completely separable from and collateral to the merits of the action." *Harris*, 420 Md. at 318 (internal quotation marks and citations omitted). This element is likewise met because the issue of time and manner of sentencing is entirely separate from the merits of innocence or guilt.

Finally, we consider whether the issue would be unreviewable if review were delayed until the entry of a final judgment. Appellant asserts that a delay in sentencing violates his due process rights and may be unreviewable because he may never be released from Virginia. As Appellant notes, the right to a speedy trial does not apply to sentencing.

36

However, a delay in sentencing may violate due process if the delay is prejudicial. In *Betterman v. Montana*, the Supreme Court of the United States explained that although speedy trial rights are not implicated between conviction and sentencing, defendants retain a due process right to a sentencing proceeding that is fundamentally fair. 578 U.S. 437, 447–48 (2016). Due process is a flexible concept "and calls for such procedural protections as the particular situation demands." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see also Reese v. Dep't of Health and Mental Hygiene*, 177 Md. App. 102, 150 (2007); *Johnson v. Md. Dep't of Health*, 470 Md. 648, 686 (2020) (citation omitted).

Maryland has examined the due process implications of a delay in sentencing in *Erbe v. State*, a case in which the defendant was convicted of certain charges at a bench trial that occurred in June of 1969. 276 Md. 541, 543 (1976). He was not sentenced at that time, and the case records "apparently were lost" for several years until January of 1973. *Id.* The court sentenced the defendant in July of 1974. *Id.* On appeal, the Supreme Court of Maryland considered whether "a long delay in sentencing in itself is sufficient to violate due process." *Id.* at 562. The Court noted that consideration of whether a delay in sentencing "amounts to an unconstitutional deprivation of rights depends upon the circumstances." *Id.* (quoting *Pollard v. United States*, 352 U.S. 354, 361 (1957)). The Court, citing to *Pollard* and adopting the opinion of the Appellate Court of Maryland examined the following factors: 1) whether the delay was purposeful or oppressive as opposed to inadvertent; 2) whether the delay was promptly remedied when discovered; and

3) whether the defendant suffered any actual prejudice. *Id.* at 563–64 (citing *Erbe v. State*, 25 Md. App. 375, 388–89 (1975)). After determining that the delay had been accidental rather than a deliberate attempt to harm the defendant, that the issue was remedied "as promptly as possible when known[,]" and that the defendant had not suffered any actual prejudice as a result, the Court determined that the delay in sentencing was not in itself violative of the defendant's due process rights. *Id.* at 562, 564.

Other states that have considered delays in sentencing or resentencing agree that the primary due process concern is the prejudice resulting from the delay rather than the delay itself. For example, in *State v. Lewis*, a defendant was convicted in Oregon in 1989 of crimes committed while there; however, before he was sentenced, he was returned to Washington for sentencing on separate crimes. 278 P.3d 51, 53 (Or. Ct. App. 2012), *rev. denied*, 291 P.3d 737 (Or. 2012). When Oregon sought to procure the defendant for sentencing under the IAD, the defendant refused to be transported and took no action to effectuate the transfer. *Id.* at 55. Washington later declined to transfer the defendant on the basis that the IAD did not apply to sentencing proceedings. *Id.* After the defendant completed his Washington sentence years later in 2008, he was transported to Oregon for sentencing. *Id.* at 56. On appeal, the court considered whether Oregon's failure to sentence the defendant until he was returned from Washington caused an unreasonable delay in his ability to appeal and thereby violated his due process rights. *Id.* at 61. The court examined "(1) the defendant's prejudice from the delay, and (2) the reasons for the delay, balancing the state's culpability against the delay." *Id.* at 62 (citing *United States v. Ray*, 578 F.3d 184, 199–200 (2d Cir. 2009), *cert. den.*, 599 U.S. 1107 (2010), in turn citing *United States*

38

*v. Lovasco*, 431 U.S. 783, 789 (1977)). *See also State v. Maloney*, 354 P.3d 611, 618–19 (Mont. 2015); *United States v. Kidd*, 127 F.4th 982, 988 (5th Cir. 2025); *State v. Lopez*, 410 P.3d 226, 231–34 (N.M. Ct. App. 2017).

Here, Appellant has not made a showing of prejudice resulting from a delay in sentencing; however, as noted above, he argues that if sentencing is delayed until after his Virginia sentences are completed, he will not have the ability to argue that his sentences in Maryland should run concurrently to the sentences in Virginia. Although the sentencing judge may not have the technical ability to sentence Appellant to a term concurrent with his Virginia sentences after Appellant has completed them or been paroled—*see Parker v. State*, 193 Md. App. 469, 486 (2010) (citations omitted)—that does not limit Appellant's ability to request that the sentencing court exercise its discretion to "apply credit against a sentence for time spent in custody for another charge or crime." Md. Code (2001, 2025 Repl. Vol.), § 6-218(b)(3) of the Criminal Procedure Article. Hence, the inability to argue for a concurrent sentence has no practical impact on any sentencing for Appellant. Moreover, even if we were to agree that this qualified as prejudice, we would still balance that prejudice with the reason for the delay. In this case, the reason for the delay is that Virginia refused to send Appellant to Maryland for resentencing, and the State had no mechanism at its disposal to compel Virginia's cooperation. Thus, the State bore no culpability for the delay. *See Ray*, 578 F.3d at 199–200 (citing *Lovasco*, 431 U.S. at 789).

Consideration of whether a delay in sentencing is unreasonable or has violated a defendant's due process rights is reviewable on appeal after a final judgment is entered. Courts in Maryland and throughout the United States routinely review the question of

39

whether a delayed sentence has resulted in a due process violation after sentencing has occurred. *See, e.g., Erbe*, 276 Md. 541; *Lewis*, 278 P.3d at 53, 61–62; *Maloney*, 354 P.3d at 618–19; *Kidd*, 127 F.4th at 984; *Lopez*, 410 P.3d at 231–34; *State v. Hancock*, 748 So.2d 549, 551–52 (La. Ct. App. 1999); *Com. v. Greer*, 554 A.2d 980, 985–87 (Pa. Super. Ct. 1989).

Accordingly, this issue is reviewable upon entry of a final judgment. *In re M.P.*, 487 Md. at 68. This is not a case where a delayed review would be too late to effectuate any remedy. *See Harris*, 310 Md. at 318–20. This is because, in reviewing whether a delayed sentencing violates due process, courts necessarily review prejudice. *See Erbe*, 276 Md. at 563–64; *Pollard*, 352 U.S. at 361; *see also Ray*, 578 F.3d at 199 (quoting *Lovasco*, 431 U.S. at 790) ("In order to determine whether a defendant has been deprived of her due process right to a prompt sentencing, we 'must consider [1] the reasons for the delay as well as [2] the prejudice to the accused.'").

Each of the four elements of the collateral order doctrine must be satisfied for the underlying order to qualify as collateral and thus for this court to undertake appellate review. *Stephens*, 420 Md. at 502–03 (citing *In re Franklin P.*, 366 Md. 306, 327 (2001)). The Supreme Court of Maryland requires that the elements be applied "very strictly" in recognition of the narrow nature of the exception, which should apply "only in extraordinary circumstances." *In re M.P.*, 487 Md. at 68 (quoting *Stephens*, 420 Md. at 503). The order denying the motion to vacate Appellant's guilty plea and determining that Appellant must complete his sentences in Virginia before being sentenced in Maryland did not conjunctively satisfy the four elements necessary to fall within the collateral order

40

doctrine and thus is not a collateral order. As the Supreme Court of Maryland requires the elements to be applied "very strictly" and "only in extraordinary circumstances[,]" we decline to expand the doctrine to apply to a new category of circumstances. *See In re M.P.*, 487 Md. at 68.

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**

41